PIERCE ET AL., APPELLANTS, *v.*
OHIO DEPARTMENT OF
TRANSPORTATION, APPELLEE.

(No. 84AP-644—Decided
February 21, 1985.)

*Michael F. Colley Co., L.P.A.*, and *Dana A. Deshler, Jr.*, for appellants.
*Anthony J. Celebrezze, Jr.*, attorney

general, and *Donald J. Guittar,* for appellee.

BROGAN, J. On June 13, 1981, Charles J. Pierce, while riding his motorcycle, was struck from behind by an automobile at a "T" intersection of State Route 571 and Daly Road in Darke County, Ohio. On January 4, 1983, Pierce filed suit in the Court of Claims against the Ohio Department of Transportation ("ODOT") alleging that ODOT had negligently maintained State Route 571 by failing to maintain no-passing lines at least three hundred feet in advance of the Daly Road intersection proximately resulting in serious injury to Pierce.

In a separate cause of action, Pierce's wife Linda sought damages for loss of services and consortium for ODOT's negligence.

After answering the complaint, ODOT moved for summary judgment in its favor contending that Pierce's injuries were caused by the sole negligence of the automobile driver, Ms. Dawn R. Timmons. After the trial court granted summary judgment for ODOT, appellants appealed that judgment asserting as their sole assignment of error that the court erred in granting summary judgment because ODOT was liable for the negligent highway markings, and such negligence was the proximate cause of Pierce's injuries.

Submitted in support and in opposition to the motion for summary judgment were certain admissions made by the parties, answers to interrogatories, the deposition of the appellant, and certain affidavits.

The deposition of appellant Charles Pierce established that, at approximately 9:45 p.m. on June 13, 1981, he and five other motorcyclists were traveling west on State Route 571 when they slowed their bikes to make a turn south onto Daly Road which intersects in a "T" intersection with State Route 571.

Pierce stated the five cyclists were traveling two abreast, with himself inside of the first two cycles. He stated he came to a complete stop at Daly Road to permit two cars traveling east to pass by. He stated he signaled to turn with his left hand, and as he turned he was struck broadside by a car behind him also traveling westerly. He stated he did not look into his rearview mirror before turning.

The evidence established that State Route 571 was a relatively level two-lane road and ODOT was responsible for maintenance of the state route. The posted speed for State Route 571 was fifty-five m.p.h.

Larry Roettger, Acting District Traffic Engineer for ODOT, submitted his affidavit. He stated he was a sixteen-year veteran of ODOT and was familiar with the intersection in question. He stated the intersection was located approximately one mile west of the corporation line of Greenville, Ohio. He stated there were residences on both sides of both roads, which area may be defined as residential by the Ohio Manual of Uniform Traffic Control Devices.

He further stated the traffic control on State Route 571 consists of a four-inch dashed yellow centerline and a four-inch solid yellow no-passing line on each approach east and west to the intersection of Daly Road. He also indicated the no-passing line for westbound traffic begins at three hundred eleven feet in advance of the physical centerline of the Daly Road intersection.

He stated the passing lines were painted on State Route 571 on October 5, 1979, and were in place at the time of the accident. He stated the passing lines were in conformity with ODOT's manual Section 3B-7 for a residential or rural area. He attached a copy of the manual.

Appellants submitted the affidavit of Patrick Harrison, attorney for ap-

pellants, who stated, on February 26, 1982, he went to the accident site and observed that there was no sign on the side of State Route 571 indicating an intersection was being approached and that no passing was permitted. He stated he "walked off" the length of the yellow no-passing line as one approaches Daly Road on State Route 571 and it measured less than one hundred feet.

Pierce stated neither he nor any of his fellow cyclists heard the automobile driver behind them signal that she intended to pass them. He stated he did not see the car before it struck him. The driver of the automobile was Dawn Timmons. Pierce stated he understood that Timmons crossed the yellow line and struck him while he was located in the intersection. Pierce settled his claim with Timmons before filing suit against ODOT.

The trial court, in granting summary judgment for the appellee, noted there was a conflict in the evidence as to the actual length of the no-passing yellow line on State Route 571. The court noted that "[r]egardless of the length of the yellow line, Pierce admits Timmons crossed the yellow line." The court found that Timmons passed in a no-passing zone in violation of R.C. 4511.30(C), and this was the sole proximate cause of the collision.

The court further found that the fact that State Route 571 was negligently or incorrectly marked was not an excuse for a violation of R.C. 4511.30, citing *Chambers* v. *McFerren* (1959), 168 Ohio St. 398 [7 O.O.2d 247].

R.C. 4511.30 provides in pertinent part:

"No vehicle or trackless trolley shall be driven upon the left side of the roadway under the following conditions:

"* * *

"(C) When approaching *within one hundred feet of or traversing any intersection* or railroad grade crossing." (Emphasis added.)

In *Chambers* v. *McFerren,* paragraph two of the syllabus, the Supreme Court held that the mere fact that a highway was marked by a broken white line separating its right lane from its left lane, and that there were no yellow lines or other markings within one hundred feet of an intersecting highway, do not constitute a legal excuse for a violation of R.C. 4511.30.

In *Mann* v. *Lewis* (1970), 22 Ohio St. 2d 191 [51 O.O.2d 274], the Supreme Court held that R.C. 4511.30(C) was intended, and will be construed as intending, to make it unlawful for a motor vehicle to be to the left of the center of the roadway when approaching within one hundred feet of, or traversing, an intersection. The court found the motorist negligent as a matter of law, and cited *Chambers, supra,* as authority for denying appellee's claim that the intersection was unmarked or unnoticeable as a defense.

The evidence clearly established that Timmons struck Pierce within one hundred feet of the Daly Road intersection, and she was negligent as a matter of law and her negligence proximately caused his injuries. *Chambers* establishes that unmarked passing zones do not provide defenses to those who pass within one hundred feet of intersections. Neither the state nor ODOT was made a party to the litigations in *Mann* and *Chambers.* The critical issue is whether ODOT's failure to properly mark no-passing zones may render it liable "concurrently" with the negligent motorist.

Appellants contend that ODOT's negligence in failing to properly mark State Route 571 with a no-passing line three hundred feet from Daly Road proximately caused Pierce's injuries.

R.C. 4511.09 states, "[t]he department of transportation shall adopt a manual and specifications for a uniform system of traffic control devices * * * for use upon highways within this state."

R.C. 4511.10 states in pertinent part:

"The department of transportation may place and maintain traffic control devices, conforming to its manual and specifications, upon all state highways as are necessary to indicate and to carry out sections 4511.01 to 4511.78 and 4511.99 of the Revised Code, or to regulate, warn, or guide traffic."

R.C. 4511.11(A) provides that local authorities in their respective jurisdictions shall place and maintain traffic control devices in accordance with the Department of Transportation manual and specifications for a uniform system of traffic control devices, adopted under R.C. 4511.09, upon highways under their jurisdiction.

In *Royce* v. *Smith* (1981), 68 Ohio St. 2d 106 [22 O.O.3d 332], the Supreme Court held that a complaint and a cross-claim seeking to impose liability on township trustees for their alleged negligence in failing to maintain a stop sign located on a township road state claims upon which relief can be granted. Justice Sweeney, speaking for the majority, stated at 109:

"Township trustees are 'local authorities' for purposes of R.C. Chapter 4511. Appellants submit that the applicable standard of care to determine whether the trustees have fulfilled their obligations under R.C. 4511.11 or have been negligent with respect thereto is established by the Department of Transportation manual, which is incorporated into the statute by express reference. Several provisions in the manual are relevant to the instant cause. Section 2F provides in pertinent part: 'Special care should be taken to see that weeds * * * [and] shrubbery * * * are not allowed to obscure the face of any sign.' Section 2E-1 speaks of positioning signs for maximum visibility, while Section 2N-17 recommends the use of a 'Stop Ahead' sign if the visibility of a stop sign is restricted by, *inter alia,*

'foliage.' If, as appellants argue, R.C. 4511.11 imposes official duties, specifically the aforestated duties described in the manual, then the breach of these duties would give rise to liability pursuant to R.C. 5571.10."

Section 3B7 of the Department of Transportation manual states:

"No-passing zones should be used at rural and urban intersections where engineering judgment so dictates. For appropriate signs which may accompany no-passing zones, see Sections 2J-21 and 2N-37. The no-passing lines should extend at least 300 feet in advance of a rural and 150 feet in advance of an urban intersection."

Appellee contended before the trial court that, while the manual was binding upon local authorities by statute and case law, there is no statute which places a similar duty upon the state. Appellee contends its only duty was to promulgate the manual. It contends the provisions of R.C. 4511.10 are not mandatory. Therefore, appellee contends "that whether the Director chooses to adhere to it or not is totally within their [*sic*] discretion." Appellee also contends that the manual provisions relating to no-passing zones are by their own terms "discretionary." Annotation (1970), 34 A.L.R. 3d 1008, discusses cases dealing with the question of whether, and under what circumstances, the governmental body ultimately responsible for the construction and maintenance of highways and streets may be held liable for damages suffered as a result of a motor vehicle accident occurring at an intersection, *i.e.,* because of a failure to erect a traffic control device, or because of a failure to properly maintain an erected traffic control device at an intersection.

In *Tamm* v. *State* (1967), 29 App. Div. 2d 601, 285 N.Y. Supp. 2d 753, the court dismissed a contention that traffic at a "Y" intersection was inadequately and negligently controlled. The court

held that the state of New York was not liable for injuries sustained by an automobile passenger when the driver of an auto entered the intersection without heeding the command of a visible stop sign, whose location conformed to statutory requirements, and collided with a truck. The court acknowledged, however, that the state owed a duty to users of state highways to give adequate warnings of the existing conditions and hazards on its highways and that such signs were also required to be appropriate in design, unambiguous in import, properly placed, and referred specifically to the Manual of Uniform Traffic Control Devices adopted by the state as to the location of stop signs at an intersection.

In this case, the evidence clearly establishes that State Route 571 is a state highway within the jurisdiction of the State Highway Department. Appellee's traffic engineer states the no-passing line was indeed painted on the road in 1979 and extended three hundred plus feet in advance of the Daly Road intersection. Apparently, the State Highway Department "engineering judgment" dictated that a no-passing zone be placed where it was placed. Its length, if appellee's evidence is accepted, was in conformance with the manual's dictates as to a rural road.

Having decided to place a traffic control device on State Route 571, the department had a duty to comply with the requirements of its own manual. See R.C. 4511.10.

In *Dougherty* v. *Hall* (1941), 70 Ohio App. 163 [24 O.O. 502], the plaintiff's decedent was injured as a result of the negligent operation of a motor vehicle by the driver of his car pool. Plaintiff's decedent died while being operated on for said injuries when a physician, unaware that he had a problem with his thymus gland, administered ether. In discussing the issue of proximate cause,

the Summit County Court of Appeals stated:

"For a cause to be an efficient intervening cause, it must be one, not brought into operation by the original wrongful act, but operating entirely independent thereof; it must be such a cause as would have produced the result, without the co-operation of the original wrong.

"By the intervention of such a cause, the chain of causation from the original wrong is broken; but 'whoever does a wrongful act is answerable for all the consequences that may ensue, in the ordinary course of events, though such consequences are immediately and directly brought about by an intervening cause, if such intervening cause was set in motion by the original wrongful act, or was, in reality, only a condition on or through which the negligent act operated to produce the injurious result. The intervention of a responsible human agency between a wrongful act and the injury does not absolve the defendant from liability, if his negligence and the intervening agency co-operated in causing the injury.' 29 Ohio Jurisprudence, Negligence, Section 78." (*Id.* at 172. Citations omitted.)

In *Thropp* v. *Bache, Halsey, Stuart, Shields, Inc.* (C.A.6, 1981), 650 F.2d 817, 821, the Sixth Circuit Court of Appeals noted:

"* * * Under Ohio law, an intervening cause that will break the chain of causation must be one 'not brought into operation by the original wrongful act, *but (it must operate) entirely independent(ly) thereof;* it must be such a cause as would have produced the result, *without the co-operation of the original wrong.'* * * *" (Emphasis added.)

The trial court placed emphasis on the fact that Pierce "admits that Ms. Timmons cross[ed] a yellow line less than 100 feet in length." Appellee in its brief stated, "Pierce admits that the

Timmons' Pontiac crossed the solid yellow no-passing line on the road to pass him." Appellee refers us to page ninety-one of appellant's deposition, as follows:

"Q. So in other words, your understanding of the accident is she crossed the yellow line to pass you; is that right?

"A. True.

"Q. Solid yellow line?

"A. Yes."

Appellant's answers at page ninety-one of his deposition must be examined in light of his earlier testimony in the deposition. At pages seventy-eight and seventy-nine of his deposition, appellant answered these questions propounded by appellee's counsel, as follows:

"Q. When did you first notice this Pontiac driven by Miss Timmons?

"A. I didn't.

"Q. You never saw it?

"A. No.

"Q. From the time you left that bar *until the time it collided with you,* you never saw that car?

"A. I've never saw it. That's the first time I've ever saw it. [*Sic.*]

"Q. Did you hear it?

"A. No." (Emphasis added.)

Later, in the deposition at page eighty-three, appellant answered in the following manner:

"Q. * * * And did you look in your rearview mirror before you made the turn?

"A. No.

"Q. You just made the turn without looking?

"A. Yes.

"Q. And how soon after you started to make the turn did you collide with the Pontiac?

"A. Right then."

At page ninety-two of the deposition, appellant speaks of the yellow line:

"Q. And the line you're talking about is a solid yellow line, the line that she crossed when she passed you?

"A. I *presume* its solid, I haven't been back there, *but if it's like in Indiana, it's a solid yellow line and no passing.*" (Emphasis added.)

Any fair reading of Pierce's testimony, and construing the evidence most favorably to him, appellant did not see Timmons cross a yellow line. He saw or heard nothing before he was struck by the Timmons' automobile. Since he was struck at the intersection as he turned to enter Daly Road, he presumed she crossed a yellow line. It is undisputed that Timmons was passing illegally at the *point* of impact. Where she began to pass the motorcycle is simply unclear from the state of the evidence.

It is appellants' contention that had the state properly marked the highway in conformance with its manual, *i.e.,* a yellow line three hundred feet from the intersection, Timmons would have been properly alerted as to the oncoming "T" intersection, and would not have passed the motorcycle. It must be remembered that the highway had a posted speed limit of fifty-five m.p.h. and the no-passing zone of three hundred feet is specifically created with the speed limit of the highway in mind.

The testimony of Timmons was not presented. There is no evidence of where on the highway she began to pass the motorcycles. There is a conflict in the evidence as to the length of the no-passing line. Perhaps it played no part in the accident.

It must be remembered that this matter was disposed of by a summary judgment. Civ. R. 56(C) provides in part:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answer to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, *such party being entitled to have the evidence or stipulation construed most strongly in his favor.* * * *" (Emphasis added.)

Civ. R. 56(E) provides in part:

"* * * When a motion for summary judgment is made *and supported as provided in this rule,* an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. * * *" (Emphasis added.)

It is clear that the appellee did not support its motion pursuant to Civ. R. 56. Appellants may, therefore, rely upon their complaint in which they aver that appellee's negligent failure to maintain no-passing lines at least three hundred feet in advance of the Daly Road intersection proximately resulted in Pierce's injuries and damages.

For the foregoing reasons, appellants' assignment of error is well-taken and is sustained. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

STRAUSBAUGH and WHITESIDE, JJ., concur.

BROGAN, J., of the Second Appellate District, sitting by assignment in the Tenth Appellate District.