LUMBERMENS MUTUAL CASUALTY COMPANY ET AL., APPELLANTS, *v.* OHIO DEPARTMENT OF TRANSPORTATION, APPELLEE.

BATES ET AL., APPELLANTS, *v.* OHIO DEPARTMENT OF TRANSPORTATION, APPELLEE.

(Nos. 88AP-05 and 88AP-06—Decided September 20, 1988.)

*Wirtz & Kohn, Dennis P. Wirtz* and *Jeffrey L. Kohn,* for appellant Lumbermens Mutual Casualty Company.

*Ransier & Ransier* and *Frederick L. Ransier III,* for appellant David Bates.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Donald J. Guittar,* for appellee Ohio Department of Transportation.

BRYANT, J. These appeals concern a one-vehicle accident occurring on April 23, 1984 near mile marker 134.4 of eastbound Interstate 70. There, the driver of a tractor-trailer, David Bates, lost control of his vehicle, collided into a concrete underpass, and overturned on the median of the highway. The accident caused severe injury to Bates and the total loss of the tractor-trailer and its cargo.

Various plaintiffs, including Bates, subsequently brought suit in the Ohio Court of Claims. At trial, they presented evidence in order to prove that the state had failed to keep the highway in a reasonably safe condition, and had failed to post warning signs that were in compliance with the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways.

The evidence was undisputed that numerous repairs had been made on the stretch of highway in question, and that, at a minimum, the road was not smooth. Plaintiffs argued that the repairs were insufficient to render the road safe, especially in light of the lack of signs adequately warning of the rough road. To the contrary, the state argued that the stretch of highway was not in so serious a condition after the repairs that it could have caused the accident, and that adequate warning signs were in place. The court ruled in favor of the state. The plaintiffs' appeals have been consolidated, and they raise three assignments of error in their joint brief, as follows:

"1. The Trial Court erred in holding that the Defendant-Appellee need only establish that it took some action after it received actual notice of defects in and on the roadway.

"2. The Trial Court erred in holding that the Defendant-Appellee complied with its statutory duty to conform to the requirements of its own manual, known as the Ohio Manual of Uniform Traffic Control Devices.

"3. The Trial Court's decision in favor of Defendant-Appellee Ohio Department of Transportation is against the manifest weight of the evidence."

In their first assignment of error, plaintiffs contend that the lower court applied the incorrect legal standard in determining whether the state took adequate measures to ensure safe travel on the highway. The court summarized the rule of law, as follows:

"* * * When an allegation of negligence is based upon the existence of a hazard or defect, as in the case at bar, the legal principle prevails that notice, either actual or constructive, of such hazard or defect is a prerequisite element in order to show defendant's failure to exercise reasonable care. * * * [Citations omitted.] *In addition, if defendant had notice, there must be a showing that defendant failed to take any action for the safety of the public.*" (Emphasis added.)

Plaintiffs highlight the underscored language as proof that the trial court allowed the state to escape liability upon the basis that it took some action, as opposed to reasonable action, to provide safe highways.

We agree that the lower court's summary of the law is incorrect. The parties do not dispute that the state had a duty to keep this stretch of highway in a reasonably safe condition. *Knickel* v. *Dept. of Transp.* (1976), 49 Ohio App. 2d 335, 339, 3 O.O. 3d 413, 415, 361 N.E. 2d 486, 489. Defendant does not meet that duty simply by taking any degree of action. Rather, the action taken in response to highway defects must be sufficient to render the highway reasonably safe for the traveling public. The totality of the circumstances must be looked at to determine whether the measures taken by defendant meet that test. Safe travel may be assured by adequate repairs of the highway, by the installation of signs adequately warning of a danger, or by a combination of these and other measures.

Given the lower court's incorrect statement of the applicable standard, we assume such law was used by the court in determining whether the state is liable for the accident. Although the trial court's decision later states the appropriate standard, we are nonetheless uncertain as to which standard the court employed in deciding this case. Accordingly, we sustain plaintiffs' first assignment of error.

In their second assignment of error, plaintiffs challenge the lower court's finding that the warning signs erected by the state comply with the Ohio Manual of Uniform Traffic Control Devices. Pursuant to *Pierce* v. *Ohio Dept. of Transp.* (1985), 23 Ohio App. 3d 124, 23 OBR 235, 491 N.E. 2d 729, the state is liable in damages for accidents proximately caused by its failure to comply with the requirements of the Manual. The trial court herein found that the state had complied with the Manual, stating, as follows at 5-6:

"* * * [T]he court is convinced that there were signs, consisting of 'bump' and/or 'rough road' warnings, reasonably close to the area where this accident occurred. In addition, the court finds that ODOT has complied with its duty to conform to the requirements of its own manual and specifications for a uniform system of traffic control

devices adopted under R.C. 4511.09. [Citation omitted.] Thus, the court finds that the plaintiffs have not proven by a preponderance of the evidence that ODOT failed to adequately warn eastbound drivers on I-70 of unusual road conditions for which to remain alert."

As stated *supra,* the accident occurred at the 134.4 mile marker of eastbound Interstate 70. The evidence at trial indicated that bump signs were posted at the 129.65 and 134.1 mile markers, approaching the accident site. Further, the evidence also showed that a rough road sign was posted at the 130.0 mile marker, and that two rough road signs were posted at the 133.0 mile marker. None of these signs was accompanied by advisory speed signs.

Further, a videotape of the scene filmed the day after the accident showed a rough road sign, without an accompanying advisory speed sign, within sight of the accident site. Plaintiffs contended at trial that this latter rough road sign was erected after the accident; and, in fact, there was little, if any, evidence that indicates the sign was in place prior to the accident. To the contrary, some evidence, including internal memoranda of the Ohio Department of Transportation and the absence of records of the installation of such a sign, suggested the sign was not in place before the accident. On appeal, however, plaintiffs assert that the warning signs near the accident site, including the disputed rough road sign

shown on videotape, did not comply with the Manual because the signs were not accompanied by advisory speed signs and because the signs were located an excessive distance from the stretch of roadway involved in the accident.[1]

We agree with plaintiffs that the Manual requires that rough road signs and bump signs be used in conjunction with advisory speed signs. Section 2N-28 of the Manual states, as follows:

"* * * [A rough road] sign is intended for use where there is one or more severe pavement irregularities which require a significant reduction in speed. The Advisory Speed sign (W-143) shall be used to indicate the maximum safe speed at which the road can be comfortably traveled. These signs shall be removed as soon as the rough surface condition has been corrected."

Section 2N-29 states a similar "shall" requirement for advisory speed signs with regard to bump signs. Further, Section 1D(1) states that the word "shall" represents a mandatory condition, one that must be met when a particular traffic device is installed. Although it may be an exercise of engineering judgment whether conditions are such that a rough road sign or a bump sign should be installed, the foregoing sections nonetheless mandate that these signs, once installed, be accompanied by advisory speed signs. Since a rough road sign is apparently not to be installed unless a "significant reduction" in speed is called for by the

[1] We note that plaintiffs' argument, for the purpose of the second assignment of error, proceeds from the assumption that the rough road sign shown in the videotape was in place prior to the accident. Although plaintiffs' reply brief contains vigorous argument indicating they do not concede that point, their argument seems not to be asserted as a challenge to the sufficiency of the videotape evidence, but rather merely as a point of dispute that was raised at trial. Given the foregoing, for the purpose of the second assignment of error, we begin with the notion that the rough road sign shown in the videotape was in place prior to the accident.

particular road conditions, the requirement of an advisory speed sign in connection therewith is only logical.

In finding that an advisory speed sign was "not a necessity," the lower court apparently ruled that certain other provisions make the decision to place an advisory speed sign a discretionary one. Section 2N-52, for example, states that advisory speed signs "*[w]hen used,* * * * shall be mounted immediately below the standard Warning sign." (Lower court's emphasis.) Further, Section 2M-1 states that warning signs "may" call for a reduction of speed. However, the lower court incorrectly relied on these sections. The language of Section 2N-52 concerns the proper position of placement of the speed sign, not the necessity for such a sign. Moreover, the "may" language of Section 2M-1 is general and cannot be said to make nonmandatory that which is clearly stated to be mandatory in other sections.[2] These sections, in short, are not inconsistent with the requirement stated in Sections 2N-28 and 2N-29 that advisory speed signs must be posted.

The lower court also relied upon other language in Section 2N-52 which states that an advisory speed sign is not to be posted if "the safe speed is equal to or greater than the existing speed limit." Like the previously cited sections, this language in Section 2N-52 does not negate the mandatory "shall" requirements of Sections 2N-28 and 2N-29, which quite specifically require the installation of advisory speed signs in conjunction with rough road and bump signs. Further, the foregoing language of Section

2N-52 refers to standard warning signs other than just rough road and bump signs. With regard to these other standard warning signs, an advisory speed sign may indeed be unnecessary since the particular danger warned of may be located within a sufficiently low speed zone. However, given that rough road signs are intended for installation only when severe pavement irregularities require a "significant reduction in speed," the Manual quite logically mandates that an advisory speed sign accompany each rough road sign regardless of the pertinent speed limit.

In the final analysis, we find that the Manual requires that an advisory speed sign accompany each rough road and bump sign. The lower court therefore erred when it found that the state had complied with the requirements of its Manual.

By contrast, however, we cannot say that as a matter of law the trial court erred regarding the allegedly excessive distance of these signs from the 134.4 mile marker. We can discern no mandate, and plaintiffs have pointed us to none, that requires the state to post warning signs at a specific distance prior to a hazard. Section 2M-3 of the Manual states, as follows:

"Normal locations for Warning signs are given in Section 2E and Table S-1. The distance indicated in Table S-1 for proper posting of warning signs may be adjusted where necessary as a function of existing conditions and engineering judgment. * * *"

Obviously, the foregoing language contemplates a degree of flexibility with regard to the location of warning signs.

[2] Similar "may" language contained in R.C. 4511.10 is likewise not controlling, it being plain under that statute that the traffic control devices that are installed must conform to the Department of Transportation's Manual and specifications. See *Pierce, supra,* at 128, 23 OBR at 239, 491 N.E. 2d at 733.

Herein, the 134.4 mile marker of eastbound Interstate 70 was located amidst a long stretch of rough road: evidence showed that the state was frequently patching and repairing the highway between mile markers 129 and 137. Rough road signs apparently were posted at mile markers 130 and 133, and within sight of mile marker 134.4. Part of the flexibility allowed by the Manual includes the avoidance of undue repetition of signs along a clearly demarked stretch of roadway. Given these circumstances, we cannot say that the lower court erred as a matter of law in finding that the state had complied with the Manual regarding the location of the warning signs.

Pursuant to the foregoing, we sustain plaintiffs' second assignment of error, but only with regard to their arguments concerning the posting of advisory speed signs.

Plaintiffs in their third assignment of error challenge the lower court's judgment as being against the manifest weight of the evidence. This assignment of error is somewhat problematic, however, since we have found that the lower court not only applied an incorrect principle of law but failed to find a duty on the state's part to post certain warning signs. Under these circumstances, it is difficult to ascertain whether the lower court's judgment is a result of the application of incorrect law or is a result of an erroneous weighing of the evidence. For this reason, plaintiffs' manifest weight arguments must be overruled at this time.

Nonetheless, plaintiffs highlight a part of the lower court's decision under the aegis of this assignment of error which should be addressed. The lower court's decision states the following:

"The court is of the opinion that while the rough road and/or pothole condition may have been a minor contributing factor to said accident the condition of the road was *not* the proximate cause of the accident." (Emphasis *sic.*)

The foregoing statement is not supported. The record reveals no circumstances, such as a superseding cause, which would negate a "minor contributing factor" of the accident as a proximate cause thereof. While that "minor contributing factor" may eventually be determined to represent only a small fraction of the total negligence involved in proximately causing the accident, that result does not eliminate the "minor contributing factor" as a proximate cause.

For the reasons set forth above, the third assignment of error is overruled.

In summary, the first and second assignments of error are sustained, and the third assignment of error is overruled. These causes of action are remanded to the lower court for further proceedings consistent with this opinion.

*Judgments reversed
and causes remanded.*

BOWMAN and YOUNG, JJ., concur.