**FOWLER, Admr., Appellant,**

**v.**

**WILLIAMS COUNTY COMMISSIONERS et al., Appellees.**

[Cite as *Fowler v. Williams Cty. Commrs.* (1996), 113 Ohio App.3d 760.]

Court of Appeals of Ohio,
Sixth District, Williams County.

No. WM–95–034.

Decided Aug. 30, 1996.

*Thomas W. Gallagher* and *Peter O. DeClark,* for appellant.

*Gregory A. Williams,* for appellees.

MELVIN L. RESNICK, Presiding Judge.

This is an appeal from a judgment of the Williams County Court of Common Pleas, which granted the summary judgment motion of defendants-appellees and dismissed plaintiff-appellant's wrongful death and survival action.

Appellant, Cynthia Fowler, administrator of the estate of William Fowler, appeals that judgment and sets forth the following assignments of error:

"I. The trial court erred in granting defendants's [*sic*] motion for summary judgment because defendants failed to properly place construction approach signs as mandated by the OMUTCD and are negligent per se under R.C. 2744.02(B)(5).

"II. The trial court erred as a matter of law by ruling that the defendants are immune from liability under either R.C. 2744.03(A)(3) or (5).

"III. The trial court erred in ruling that there is no evidence that the defendants acted in a wanton and reckless manner.

"IV. The trial court erred as a matter of law by failing to address appellant's nuisance claim under R.C. 2744.02(B)(3)."

During early and mid July 1993, county employees were replacing a culvert under County Road G just west of its intersection with County Road 19.50 in Williams County, Ohio. County Road G runs in an east-west direction; County Road 19.50 is a north-south route. The area in which the roads are located is rural; the roads have no artificial illumination.

In order to remove the old culvert, the workers had to dig a trench about six feet wide and six feet deep completely across County Road G. When they completed their work for the day, they would park a large, yellow John Deere backhoe on the west side of the trench so that County Road G was completely

blocked. It is undisputed that Walter Schelling, the Williams County Engineer, directed his work crew to park the backhoe in such a manner.

Approximately six to seven hundred feet west of the intersection of County Roads G and 19.50 and one-tenth of a mile east of the actual construction site, the crew placed a Type III orange and white striped barricade in the westbound lane of County Road G. A "Road Closed" sign was affixed to the barricade; a night-timed flashing light was attached to the top of the barricade. A similar barricade with a "Road Closed" sign was also installed farther east on County Road G at its intersection with State Route 191.

Sometime during the evening of July 16, 1993 or the early morning hours of July 17, 1993, William Fowler drove his motorcycle into the backhoe that was parked across County Road G. When a state trooper was called to the scene at approximately 6:30 a.m. on July 17, he discovered Fowler's body slumped over his motorcycle. After examining the body, the coroner estimated that Fowler died of head injuries around 11:00 p.m. on July 16, 1993.

When he investigated the scene of the accident, the trooper observed a thirty-four foot skid mark in the westbound lane leading to the county workers' trench and a black scuff mark on the culvert in the trench. The rear of the backhoe, at the point of impact, was moved three to four feet to the west. The front portion of Fowler's motorcycle was severely damaged.

On February 18, 1994, Cynthia Fowler, William Fowler's widow and administrator of his estate, brought a wrongful death and a survival action against appellees, the Williams County Commissioners, the Williams County Highway Department, and the Williams County Engineer ("county"), and against the Springfield Township Trustees. The claim against the trustees was eventually dismissed without prejudice. She alleged that the negligent and/or willful, wanton, reckless conduct of the county was the proximate cause of William Fowler's death and the suffering he experienced just prior to his death. In particular, she claimed that the county failed to properly warn of the construction area or make it safe and created a nuisance by placing the backhoe across County Road G.

On October 10, 1995, appellees filed a motion for summary judgment contending that no questions of fact existed on the issues of whether the immunity provided by the Political Subdivision Tort Liability Act, R.C. Chapter 2744, shielded the county from liability. Appellees further argued that no question of material fact existed on the issue of whether the decedent was the sole proximate cause of the accident that resulted in his death.

Appellant filed her own motion for summary judgment, in which she maintained she was entitled to summary judgment as a matter of law because

appellees were negligent *per se* under R.C. 2744.02(B)(5) for failure to place mandated signs at the construction area. Appellant named five different types of signs or warning devices set forth in the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD") that are allegedly required when a road is closed for construction. She further argued that, assuming that the placement of construction signs and warning devices was a discretionary function, appellees were not immune under either R.C. 2744.03(A)(5) or (6) because no question of fact existed as to whether the county acted in a wanton and reckless manner. Finally, appellant contended that no question of fact existed on whether the trench in the roadway or the parking of the backhoe across the road was a "nuisance" within the meaning of R.C. 2744.02(B)(3), thereby qualifying as an exception to the general grant of immunity provided in R.C. 2744.02(A)(1).

Both appellant and appellees relied on the pleadings, answers to interrogatories, and depositions to support their motions for summary judgment. In addition, appellant offered the affidavits of her expert witness and persons who observed the construction site to present evidence of (1) the lack of warning signs near the construction area, (2) the position of the traffic barricades on County Road G, and (3) the fact that the flashers on the barricade placed at County Road G and County Road 19.50 and on the one at County Road G and State Route 191 were inoperable.

Appellees filed a motion to strike the affidavits offered by appellant. The county asserted that appellant failed to disclose the name of her expert, that the affidavits of the lay witnesses were not properly formulated, and that the statements in all affidavits were inadmissible. After the motion to strike was filed, appellant filed new affidavits for some of the lay witnesses.

On November 28, 1995, the trial court denied appellant's motion for summary judgment and granted appellees' motion for summary judgment. The court found that no question of fact existed on the issue of whether the county was immune from liability under R.C. Chapter 2744.

The standard which this court must apply in considering appellant's four assignments of error is found in Civ.R. 56(C) which reads, in part:

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary

judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

The party moving for summary judgment is required to "specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party with a meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus. If the movant supports his motion with appropriate evidentiary materials, the nonmovant cannot merely rest upon the allegations and/or denials contained in the pleadings. He must present evidence which demonstrates the existence of a genuine issue of material fact. *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411, 599 N.E.2d 786, 787–788.

On appeal of an order granting or denying summary judgment, an appellate court applies the above standards in a *de novo* review of the record. See *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157–1158.

Before moving to a discussion of the propriety of the trial court's grant of summary judgment in favor appellees, we note that the record contains no evidence that the trial court ruled on appellees' motion to strike the affidavits filed by appellant. Accordingly, we presume that the motion was overruled. See *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 223, 631 N.E.2d 150, 154–155; *Newman v. Al Castrucci Ford Sales* (1988), 54 Ohio App.3d 166, 169, 561 N.E.2d 1001, 1004. Further, contrary to appellees' assertions, those affidavits which needed to be re-executed are in proper form and based upon the personal knowledge of the affiants. We shall therefore consider these affidavits in our determination of this appeal.

All four of appellant's assignments of error deal with the trial court's finding of immunity under R.C. Chapter 2744. The statutory law governing all four assignments is as follows.

R.C. 2744.02(A)(1) states, in part:

"Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or any employee of the political subdivision in connection with a governmental or proprietary function."

Under R.C. 2744.01(C)(2), the term "governmental function" includes "(e) [t]he regulation of the use of, and the maintenance and repair of, roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, and public grounds."

After stating the general rule on sovereign immunity, the statute then lists, under R.C. 2744.02(B), those actions for which a political subdivision will be held liable. That portion of R.C. 2744.02(B) relevant to the issue before us provides:

"[A] political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

" * * *

"(3) * * * [P]olitical subdivisions are liable for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance * * *.

"(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued."

Finally, R.C. 2744.03 provides additional defenses and immunities which the political subdivision may assert to establish nonliability. R.C. 2744.03(A)(3) and (A)(5) read:

"(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."

"(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

In her first assignment of error, appellant contends that appellees were negligent *per se* in failing to place mandated signs and warnings around the construction area on County Road G. Therefore, she concludes, the trial court not only should have denied appellees' motion for summary judgment but also granted her motion for summary judgment on the issue of liability. Her second

assignment of error argues that, even if OMUTCD does not mandate specific construction signs and warnings, the placement of such a sign is not a discretionary function for which appellees would have immunity. Appellees argue that they are immune from liability under R.C. 2744.03(A)(3) and (5). They point out that, in *Winwood v. Dayton* (1988), 37 Ohio St.3d 282, 525 N.E.2d 808, the Supreme Court of Ohio held that a political subdivision's decision to install or not install traffic control devices is a discretionary function; therefore, the enumerated immunity defenses in R.C. 2744.03 do apply. We shall consider appellants' first two assignments of error together.

After reviewing the record of this case, we find no error in the trial court's conclusion that the replacement of a culvert necessitating the closing of a county highway falls within the purview of R.C. 2744.01(C)(2)(e) and is a governmental function. Thus, pursuant to R.C. 2744.02(A)(1), appellees are immune from liability for injury or death resulting from their activities performed in the course of this function.

The next question before us is whether, as appellant contends, the lack of specified warning signs at or in advance of the construction zone is an exception within the meaning of R.C. 2744.02(B)(3) (a nuisance) and R.C. 2744.02(B)(5) (express imposition of liability by a statute) thereby abrogating the immunity afforded to appellees. We must then determine if the R.C. 2744.03 defenses affording discretionary decisions of political subdivisions immunity defeat the exception(s).

In *Franks v. Lopez* (1994), 69 Ohio St.3d 345, 632 N.E.2d 502, the Supreme Court of Ohio held that a political subdivision's failure to erect signs does not constitute a nuisance within the meaning of R.C. 2744.02(B)(3). In doing so, the court further held that, despite the fact that R.C. 4511.11(A) imposes a duty on political subdivisions to follow the OMUTCD, the decision to install the traffic control devices is discretionary. *Id.* at 349, 632 N.E.2d at 505–506, citing *Winwood v. Dayton.* Therefore, in a case where the political subdivision decides not to post any signs, it is immune from liability for failure to follow the OMUTCD. However, once the decision to install certain traffic control devices is made, the implementation of that decision is not discretionary and not immune from liability. *Id.*

In the present case, the county decided to close County Road G and to use or install particular traffic control devices to apprise the public of this closing. Thus, in implementing this decision, the county was required to follow the requirements set forth in the OMUTCD. That is, where signs used were required to comply with the mandates of OMUTCD or implementation was not a discretionary decision, appellees are not protected by the immunity provided in

R.C. 2744.03(A)(3) or (A)(5). See *Jones v. Shelly Co.* (1995), 106 Ohio App.3d 440, 447, 666 N.E.2d 316, 320–321.

Appellant points to cases, however, where courts have held that certain provisions of the OMUTCD are mandatory and failure to comply with these mandates is negligence *per se.* See *Leach v. Dayton* (1994), 98 Ohio App.3d 467, 648 N.E.2d 895; *Patton v. Cleveland* (1994), 95 Ohio App.3d 21, 641 N.E.2d 1126; *Lumbermens Mut. Cas. Co. v. Ohio Dept. of Transp.* (1988), 49 Ohio App.3d 129, 551 N.E.2d 215; *Howe v. Jackson Twp. Bd. Of Trustees* (1990), 67 Ohio App.3d 159, 586 N.E.2d 217; *Kocur v. Ohio Dept. of Transp.* (1993), 63 Ohio Misc.2d 342, 629 N.E.2d 1110. Most of these cases were decided prior to *Franks v. Lopez,* a case which made clear the fact that a political subdivision's immunity defenses are unavailable only in cases where the political subdivision decides to use particular signs and either does not follow the mandatory provisions of the OMUTCD or fails to maintain the installed signs. *Leach* is also distinguishable because it involves the abandonment by city workers of a piece of heavy machinery on a public street.

However, two of the cases further indicate that the installation of warning signs at or near a road construction site is *not* a discretionary function of the political subdivision. See *Patton v. Cleveland,* 95 Ohio App.3d at 29, 641 N.E.2d at 1130–1131; *Howe v. Jackson Twp. Bd. of Trustees,* 67 Ohio App.3d at 165–166, 586 N.E.2d at 221–222. See, also, *Marcum v. Adkins* (Mar. 28, 1994), Gallia App. No. 93–CA–17, unreported, 1994 WL 116233. These cases hold that the placement of temporary warning signs do not involve policy making decisions involving the "weighing of fiscal priorities, safety, and various engineering considerations," see *Williamson v. Pavlovich* (1989), 45 Ohio St.3d 179, 185, 543 N.E.2d 1242, 1248, which are the hallmark of a high degree of official discretion. *Patton,* 95 Ohio App.3d at 29, 641 N.E.2d at 1130–1131; *Howe,* 67 Ohio App.3d at 166, 586 N.E.2d at 222. As a result, the *Patton* and *Howe* courts found that, unlike the installation of traffic signals, the installation of construction warning signs was not discretionary. Under the applicable law and specific facts of this case, we must agree.

A county engineer is responsible for the construction projects on county roads. R.C. 5543.01. R.C. 5543.17 discusses the closure of county roads and provides:

"The county engineer shall, at the time he makes surveys, plans, profiles, cross sections, estimates, and specifications for * * * plans for the construction, improvement or repair of any bridge or culvert, determine whether the making of the improvement will require the closing to traffic of such highway, bridge, or culvert. The engineer shall, whenever practicable, so prepare the plans and specifications for an improvement as to avoid closing to traffic at any one time the entire width of the highway or bridge being improved. * * * If the engineer

determines that the making of the improvement will require the closing to traffic of the highway, bridge, or culvert, he shall further determine whether it is practicable to construct within the limits of the highway or to provide a new location for and construct a temporary highway, bridge, or culvert, to be used by travelers in lieu of the closed highway, bridge, or culvert. His determination in respect to all matters above set forth shall be made in writing, and shall accompany the copy of his surveys, plans, profiles, cross sections, estimates, and specifications filed with the board of county commissioners or board of township trustees.

" * * *

"*If he determines that it is impracticable to construct a temporary highway, bridge, or culvert he shall include as a part of the plans for the improvement plans, specifications, and estimates for all necessary and proper barriers and detour signs. Signs must be so placed as to conspicuously indicate the points at which it is necessary for traffic to leave the closed highway, and plainly mark the most direct practicable route to be followed, indicating the road to be followed by the detoured traffic at all road crossings and forks. The costs and expenses of constructing temporary highways, bridges, or culverts, or placing barriers and detour signs shall be included in and regarded as a part of the costs and expenses of the improvement and shall be paid accordingly.* \* \* \* Only such portion of any highway shall be closed at any one time as is determined necessary by the engineer.*" (Emphasis added.)

A fair reading of this statute reveals that the county engineer must weigh fiscal considerations, safety and engineering considerations in determining whether to totally close a road. He is not, however, provided with any discretion concerning the use of barriers and detour signs. He must install any "necessary and proper" signs, including detour signs. Thus, in closing County Road G, appellees were required to comply with any mandated provisions of the OMUTCD.

Appellant asserts that appellees failed to comply with the following mandatory provisions of OMUTCD either by failing to install the required device or by the placement of the device.

First, appellant argues that Paragraph 7F–4, OMUTCD, mandates that, when a road is closed, a Type III barricade must extend completely across the road or from curb to curb. Paragraph 7F–4 provides:

"Barricades must not only be highly visible by themselves, but they shall also be protected by advance warning devices at night.

" * * *

"On construction projects, when a road section is closed to traffic, Type III barricades *shall* be erected at the points of closure. They may extend completely

across a roadway and its shoulders (as a fence) or from curb to curb." (Emphasis added.)

■ As set forth in Paragraph 1E(a), the OMUTCD states that when a device is described with the word "shall," the requirements for the design and application of the device are mandatory. Accordingly, a plain reading of the relevant portion of Paragraph 7F-4, requires that Type III barricades must be erected at the point of closure and must extend across the closed road in one of two ways. It is undisputed that a single Type III barricade was used in this case and was observed only in the westbound lane of County Road G. Appellees were not provided with immunity as to this type of device.

■ Paragraph 7C-4, OMUTCD governs the use of a "Road Closed" sign and reads, in part:

"This sign shall be used at the point where the roadway is closed to all traffic except contractor's equipment and officially authorized vehicles and shall be accompanied by a detour signing when the detour begins at the point of the roadway closure. The sign should be erected in the center of the closed roadway on a Type III barricade."

In the case before us, the road closed sign was on a Type III barricade located on County Road G some six to seven hundred feet west of its intersection with County Road 19.50. Although the first sentence of Paragraph 7C-4 is framed in mandatory language, appellant failed to offer any facts to demonstrate noncompliance with its requirements. From the evidence offered, it could be inferred that the "Road Closed" sign was placed at the point where the road was closed to unauthorized vehicles. Also, the road closed sign was not placed at the point, *i.e.,* the intersection, where the detour would begin thereby avoiding the requirement of a "Detour" sign.

Nevertheless, the second sentence of Paragraph 7C-4, OMUTCD, is troublesome. The use of the term "should" is permissive, and, therefore, under Paragraph 7C-4, it is within the county's discretionary function to determine the placement of a barricade. We are of the opinion, however, that the county engineer exercised this function and the county road crew was required to implement this decision.

The county engineer revealed, in deposition testimony, that he required his crews to place the Type III barricade/"Road Closed" device in the middle of the road. The witness testimony and photographs offered in support of the motions for summary judgment indicated that the sign was in the westbound lane, not the center, at the time of decedent's accident. It appears that under the uncontradicted facts presented below, the road crew could not exercise any discretion in its use of the Type III barricade. Accord *Rhodus v. Ohio Dept. of Transp.*

(1990), 67 Ohio App.3d 723, 731–732, 588 N.E.2d 864, 868–870. Accordingly, appellees are not immune from liability on this issue.

■ The remaining arguments raised by appellant involve the lack of signs related to a detour sign and a "Road Closed _____ Miles Ahead" sign as mandated in the first sentences of Paragraphs 7D–8 and 7C–5, of the OMUTCD. The language in each of these sentences is mandatory. Therefore, appellees are not immune from liability for personal injury and death arising from the failure to install these signs.

■ In addition, we find that questions of fact exist on the issue of whether the flasher affixed to the top of the Type III barricade was operating at the time of the decedent's accident.

In *Franks v. Lopez*, 69 Ohio St.3d at 349, 632 N.E.2d at 505–506, the Ohio Supreme Court held that a political subdivision's failure to maintain signs already in place may constitute an actionable nuisance claim. Appellant submitted affidavits in support of her motion for summary judgment, which were based on the personal knowledge of the affiants, that the flashing light on the barricade near County Road G and County Road 19.50 was not operating on the night in question. The Williams County Superintendent of Highways submitted a reply affidavit indicating that it was the flashing light at County Road G and State Route 191 that was inoperable. Accordingly, a question of fact exists as to whether the sign was maintained.

■ For the foregoing reasons appellant's second assignment of error is found well taken. We do not, however, believe that any negligence *per se* resulting from a violation of one of the rules found in the OMUTCD automatically entitles appellant to the grant of summary judgment on the issue of liability.

In this case, as in most other cases of this kind, the issue to which the violations of the OMUTCD relate is whether a political subdivision is immune from liability in tort under R.C. Chapter 2744. One of the exceptions to that immunity is a failure on the part of the political subdivision to keep its roads "open, in repair and free from nuisance." See R.C. 2744.02(B)(3). Appellant's cause of action must rest on the statutory ground that the installation of and the lack of mandatory warning devices at this particular construction area are an exception to the grant of immunity, *i.e.*, they constitute a nuisance. Therefore, the failure to follow the mandates of the OMUTCD create a question of fact on the issue of whether these devices or lack thereof created a nuisance that was the proximate cause of William Fowler's injury and death. Therefore, appellant's first assignment of error is found not well taken.

In her fourth assignment of error, appellant contends that the trial court erred in not considering the issue of whether the trench across County Line G and the

placement of the backhoe were a "nuisance" within the meaning of R.C. 2744.02(B)(3).

■ Usually a nuisance, as the term is used within the context of R.C. 2744.02(B)(3), is limited to actual physical conditions affecting the structure of the highway or actual physical conditions such as obstructions upon the highway. *Williamson v. Pavlovich* (1989), 45 Ohio St.3d 179, 543 N.E.2d 1242. In *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm.* (1992), 63 Ohio St.3d 318, 587 N.E.2d 819, the Supreme Court of Ohio extended the meaning of the words "free from nuisance." The court stated that whether there is a duty to keep the roadway free from nuisance is determined by focusing on "whether a condition exists within the political subdivision's control that creates a danger for ordinary traffic on the regularly travelled portion of the road." *Id.* at 322, 587 N.E.2d at 823.

■ Even if we assume that the trench or cut across County Road G is a nuisance, no question of fact exists as to whether the determination to engage in such a project involves a discretionary function on the part of the county engineer. See R.C. 5543.17. Therefore, appellees are immune from liability on this issue.

■ With regard to the backhoe, it is undisputed that the road crew placed a large piece of machinery, lacking any warning devices, completely across an unlit road. This fact coupled with the crew's failure to follow the OMUTCD in the installation and placement of the signs around the construction site creates a question of fact as to whether appellees created a nuisance on County Road G.

Appellees maintain, however, that the backhoe parked across County Road G cannot be a nuisance because the road was closed to regular traffic. We cannot agree.

It is undisputed that County Road G is a "regularly travelled road" within the control of the county. The facts offered create a question of fact on whether a condition of danger for ordinary traffic was created because the county did not, in effect, close this road. Thus, the parked backhoe may be a nuisance.

■ Moreover, appellees are not immune from liability for this conduct. We are of the opinion that neither the county engineer nor his road crew engaged in any kind of discretionary function in using the backhoe as some sort of "traffic control device." Such conduct does not involve an employee decision "with respect to policy-making, planning, or enforcement powers" under R.C. 2744.03(A)(3). Further, it does not involve an exercise of judgment in the use of equipment under R.C. 2744.03(A)(5). Accordingly, we find, when, as here, employees of a political subdivision lack such discretion, the immunity defenses

found in R.C. 2744.03(A) are unavailable. Thus, the act of parking the backhoe across the road is not immune from liability. Accordingly, appellant's fourth assignment of error is found well taken.

Appellant's third assignment of error addresses the applicability of the last sentence in both R.C. 2744.03(A)(5) and (6) to this case. To repeat, R.C. 2744.03(A)(5) provides an employee with immunity from liability when the conduct that caused a personal injury or death is a result of the employee's exercise of judgment in acquiring or using equipment, supplies, material, personnel or other resources. The employee is not immune, however, if in exercising that judgment he or she acts "with malicious purpose, in bad faith or in a wanton or reckless manner." *Id.* R.C. 2744.03(A)(6) grants blanket immunity to certain employees and lists acts or omissions made "with malicious purpose, in bad faith or in a wanton or reckless manner" as an exception.

Appellant urges that, even if appellees are immune from liability under the R.C. 2744.03, questions of fact exist as to whether their conduct was wanton and reckless in failing to install proper signage and in the placement of the Type III barricade and the backhoe.

■ "Wanton and reckless conduct" is defined as perversely disregarding a known risk, or acting or intentionally failing to act in contravention of a duty, knowing or having reason to know of facts which would lead a reasonable person to realize such conduct creates an unreasonable risk of harm substantially greater than the risk necessary to make the conduct negligent. *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705, 707–709.

■ In their depositions, both the county engineer and the county highway superintendent admitted that they knew people would drive around a single Type III barricade. The superintendent acknowledged that the only effective way to block a closed road was by using a barricade across the entire road. Both county officials conceded that, without complete closure of such a road, parking a backhoe across that road presented a danger. From this concession, it can be inferred that a road should not be closed unless it is properly signed. Accordingly, while not definitive proof of wanton and reckless acts, this testimony is sufficient to create a triable issue of material fact on the question of whether appellees acted in a wanton and reckless manner. Appellant's third assignment of error is found well taken.

Appellees raise three arguments in order to prevent reversal of this case. An appellee may advance an assignment of error as a shield to prevent a reversal of the final judgment entered in its favor. See *Seringetti Constr. Co. v. Cincinnati* (1988), 51 Ohio App.3d 1, 553 N.E.2d 1371.

Appellees contend that, as a matter of law, William Fowler was the sole proximate cause of the accident which resulted in his death. Although the issue of proximate cause is generally a question of fact, it becomes a question of law where the undisputed facts are such that no reasonable person could infer that a defendant's acts were the cause of a plaintiff's injuries. *Reese v. Minor* (1981), 2 Ohio App.3d 440, 2 OBR 534, 442 N.E.2d 782. In the present case, there are disputed facts as to whether appellees' failure to follow the mandates of the OMUTCD and placement of a backhoe across the entire width of an unlit road were the proximate cause of William Fowler's death. Thus, a reasonable person could infer that appellees' acts were a proximate cause of Fowler's injury.

Appellees further assert that appellant is barred from recovery under the doctrine of primary assumption of the risk. Primary assumption of the risk is when the defendant, as a matter of law, owes no duty to the plaintiff. *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 114, 6 OBR 170, 451 N.E.2d 780. Underlying this judicially created doctrine is the notion that certain risks are so inherent in some activities that they cannot be eliminated. *Collier v. Northland Swim Club* (1987), 35 Ohio App.3d 35, 37, 518 N.E.2d 1226; *Cincinnati Base Ball Club Co. v. Eno* (1925), 112 Ohio St. 175, 180–181, 147 N.E. 86.

In the case before us, appellees assume that William Fowler drove around at least one "Road Closed" sign. However, questions of fact exist as to whether that sign, due to its placement and the lack of a flasher, was visible on the night of the accident. Furthermore, questions of fact exist on the issue of whether the lack of mandatory signs, such as a detour sign, was a proximate cause of the accident. Thus, the question of whether the risks attendant to Fowler's alleged conduct are so inherent that they cannot be eliminated is not reached, and the doctrine is inapplicable.

Appellees also claim that the evidence offered demonstrated that William Fowler's negligence was greater than appellees as a matter of law. Therefore, appellant is barred from recovery.

Comparative negligence issues are for the jury to decide unless the evidence is so compelling that reasonable minds can reach only one conclusion. *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 648, 597 N.E.2d 504. In the present case, the facts presented are not so compelling that a reasonable mind could only conclude that the decedent's negligence barred recovery.

For these reasons, we find that the arguments presented by appellees are without merit.

The judgment of the Williams County Court of Common Pleas is reversed. This cause is remanded to that court for further proceedings consistent with this judgment. Appellees are ordered to pay the costs of this appeal.

*Judgment reversed.*

HANDWORK and ABOOD, JJ., concur.