### Howe
### v.
### Jackson Twp. Bd. of Trustees.
*[Cite as 2 AOA 316]*

*Case No. WD-89-48*
*Wood County, (6th)*
*Decided March 30, 1990*

R.C. 2744.02
R.C. 2744.03
R.C. 4511.11

*Steven P. Collier and Michael A. Bonfiglio, Counsel for Appellants.*

*David P. Rupp, Jr., Counsel for Appellee.*

HANDWORK, P.J.

This matter is before the court upon appeal from the June 13, 1989 judgment of the Wood County Court of Common Pleas which denied appellants' motion for partial summary judgment and granted appellee's motion for summary judgment and dismissed the suit.

Appellants alleged in their complaint that appellee, through its employees, had negligently failed to place a sign warning drivers of loose stone on a recently-repaired road as allegedly required by the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways. Appellants assert that the failure to warn Pamela S. Howe of the hazard created by the loose stone proximately caused her automobile accident which caused her injury. David Howe also joined in the complaint alleging a loss of consortium. Following a hearing on motions for summary judgment filed by each side, the court held that there remained a genuine issue of material fact with regard to appellants' claim of negligence *per se* and, therefore, denied summary judgment as to that issue. However, the court granted appellee's motion for summary judgment and found that appellee was immune from tort liability pursuant to the sovereign immunity provisions of R.C. 2744.03 (A) (3) since appellee had discretionary power regarding the posting of a warning sign.

Appellants sought an immediate appeal to this court asserting two assignments of error, which read as follows:

1. THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT SINCE THE NEGLIGENCE COMMITTED BY DEFENDANT-APPELLEE TOWNSHIP DURING THE IMPLEMENTATION OF THE DECISION TO RESURFACE A ROAD IS NOT PROTECTED BY THE DOCTRINE OF SOVEREIGN IMMUNITY.

2. THE TRIAL COURT ERRED IN DENYING PLAINTIFFS-APPELLANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT SINCE OHIO LAW IMPOSED UPON DEFENDANT-APPELLEE THE MANDATORY OBLIGATION OF ERECTING A 'LOOSE STONE' SIGN WHEN NEWLY PLACED, LOOSE STONE WAS PRESENT

AFTER THE ROAD HAD BEEN RESURFACED."

Appellants' second assignment of error addresses the denial of their motion for partial summary judgment. Such an order is not a final, appealable order. *State, ex rel. Overmeyer, v. Walinski* (1966), 8 Ohio St. 2d 23. The Ohio Constitution limits appellate jurisdiction to the review of final orders of inferior courts. Section 3(B) (2), Article IV, Ohio Constitution. Therefore, this court is without jurisdiction to decide appellants' second assignment of error. Wherefore, appellants' second assignment of error is found not well-taken.

In their first assignment of error, appellants challenge the appropriateness of granting summary judgment in favor of appellees. Appellants argue that the trial court erroneously applied the doctrine of sovereign immunity in this case.

Upon a review of the trial court's order granting summary judgment, the appellate court must determine whether summary judgment is appropriate under Civ. R. 56(C). The court must find:

"(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66.

Undisputed in this case is the fact that appellee had repaired a portion of Cygnet Road on June 29-30, 1988, by a sealing process which involved the compacting of hot asphalt and stone with a ten-ton roller. Loose stone laid on the road after the rolling process. Although the deposed witnesses contradict each other with regard to the amount of loose stone which laid on the road, it is undisputed that there was some loose stone upon the highway. No sign was posted to warn of the alleged hazardous driving condition created by the stone. Pamela Howe was injured in a one-car accident on July 1, 1988, which occurred on this portion of Cygnet Road.

Historically, governmental units have been protected from tort liability under the judicially created doctrine of sovereign immunity. Due to societal changes, the doctrine was judicially abandoned with two exceptions. In *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd.* (1983), 6 Ohio St. 3d 31, the Supreme Court of Ohio set forth the current rule regarding the sovereign immunity defense: The doctrine of municipal sovereign immunity is abolished except in cases where the alleged tortious act involved the exercise of (1) a "legislative or judicial function", or (2) "the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Id.* at paragraph two of the syllabus. Once such a policy decision has been made, the municipality is liable as other private tortfeasors for negligence of its employees and agents which occurred in the performance of their duties. *Id.* at paragraphs one and two of the syllabus. This second exception created the ministerial/discretionary test. See, Comment, Sovereign Immunity for Political Subdivisions in Ohio: The Past as Present (1986), 13 Ohio N.U. L. R. 203, at 209. This new rule has been applied to other local governmental units as well. See *Mathis* v. *Cleveland Public Library* (1984), 9 Ohio St. 3d 199 (public libraries); *Zents* v. *Bd. of Commrs.* (1984), 9 Ohio St. 3d 204 (counties); and *Hall* v. *Baltimore & Ohio R.R. Co.* (1987), 37 Ohio App. 3d 94 (townships). R.C. 2743.02 has been interpreted as applying the same rule to state action. *Reynolds* v. *State* (1984), 14 Ohio St. 3d 68. The fundamental principle behind this rule is to abandon the former proprietary/governmental distinction sometimes used by the court to impose liability under certain circumstances. *Haverlack* v. *Portage Homes, Inc.* (1982), 2 Ohio St. 3d 26, paragraph two of the syllabus. Instead, the focus of the analysis should now be centered upon whether the acts concern the "essence of governing." *Enghauser Mfg. Co.* v. *Eriksson Engineering Ltd., supra*, at 35. The two exceptions listed above were designed to cover those types of basic governing decisions. The court recognized, however, that sovereign immunity could be statutorily granted.

Subsequent to the court's decisions in the aforementioned cases, the General Assembly enacted a statute outlining a sovereign immunity defense for a political subdivision or its employees.

The Political Subdivision Tort Liability Act was designed to re-establish a limited sovereign immunity defense in Ohio somewhat broader than that available under the judicially-created doctrine. See Committee Notes, Sub. H.B. 176 (As Passed by the Senate); Committee Notes, Sub H.B. 176, (As passed by the House); and

Committee Notes, Sub. H.B. 176, (As Reported by Civil and Commercial Law Subcommittee). The Act classified various enumerated functions of government as governmental or proprietary functions. R.C. 2744.01(C) (1) and (G)(1). The Act then provided for general sovereign immunity with some enumerated exceptions. R.C. 2744.02. The critical factors which determined whether immunity was denied were the type of political subdivisions involved and the type of function it performed (governmental or proprietary). Additionally the legislature provided that certain defenses or immunities would be available to a political subdivision for those acts or omissions which would not be protected under the general sovereign immunity provisions of R.C. 2744.02(A) (1).

Pertinent to the case before us are the following provisions. R.C. 2744.02 (B) (3) provides as an exception to the grant of general sovereign immunity, that a political subdivision is liable for the "failure to keep public roads *** in repair, and free from nuisance." Since a township remains liable for injuries caused by its failure to maintain township roads and keep them free of nuisances, the township must look to R.C. 2744.03 (A) for a defense or immunity to protect the township from liability in this case. The trial court found, and appellee asserts, that R.C. 2744.03 (A) (3) applies to this case. That section reads as follows:

"The political subdivision is immune form liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."

Under both common law and statutory law, the key question in this case becomes whether or not the erection of a warning sign in this case was a basic policy-making decision requiring a high degree of official judgment or discretion. Appellee argues, and the lower court agreed, that because appellee was not statutorily obligated to erect such a warning sign, its discretionary decision not to erect such a sign is protected by the doctrine of sovereign immunity. Appellee asserts that this action was a policy decision not to act as in the case of *Hall* v. *Baltimore & Ohio RR. Co., supra.* In the *Hall* case, the court found that the board of trustees had no statutory duty install a railroad crossing safety device and the decision not to do so was the exercise of an executive or planning

function. Furthermore, appellee asserts that the decision as to whether it should erect a sign was a separate and independent policy-making decision from the policy-making decision to seal the road surface. Appellants contend, on the other hand, that the decision to post such a sign was not a discretionary, basic policy-making decision and that R.C. 4511.11(A) and Section 7D-22 of MUTCD required that such a sign be posted. To begin, we must first determine if appellee was statutorily required to place such a warning sign on the road. R.C. 4511.11 (A) requires that local governmental units place and maintain traffic control devices in accordance with the Ohio Manual of Uniform Traffic Control Devices for Streets and Highways (MUTCD) as are necessary to regulate, warn, or guide traffic. With regard to warning signs relating to road repair, the MUTCD provides, as minimum standard, for the following:

"7D-22 Loose Stone Sign (0-141)

"The Loose Stone sign is intended to be used to warn traffic of newly placed or uncompacted gravel, stone or slag surfacing. The sign shall be removed as soon as the material is properly compacted. "The sign shall be erected on the right hand side of the roadway, not less than 350 feet or more than 600 feet in advance of the beginning of the loose stone section. The typical use of this sign is shown in figure C-19."

Appellant reads the "shall" language in the section as requiring that such a sign be erected if there are loose stones in the area. Appellee argues that this provision merely mandates the procedure to be followed where it is determined that a warning is necessary.

We interpret this provision as mandating the posting of a loose stone sign where traffic will pass over gravel, stone, or slag placed on the road during the repair process before it is compacted. Therefore, this provision is not applicable to the process involved in this case. The only evidence before this court is the testimony of the supervisor for the road repair crew who testified that the road was closed during the entire repair process. He states that the process consisted of pouring hot asphalt over the existing surface followed by loose stones which were immediately compacted with a roller. The supervisor also stated that some loose stone would remain after the tar and stone were compacted which would fly off the road as traffic drove over the surface, but that no further compaction would occur. While witnesses testified that loose stone remained

after the road reopened, they did not testify as to the repair process itself. Therefore, we find that it was not mandatory under the manual to post a sign warning of loose stone on the road.

However, appellee would still have a duty under common law to act reasonably with regard to its repair process, including the posting of a warning sign where necessary to advise the traffic of a potential hazard. *Lumbermens Mut. Cas. Co.* v. *Ohio Dept. of Transp.* (1988), 49 Ohio App. 3d 129, 130. If a reasonable person would have posted such a warning sign or other device because the amount of stone remaining on the road after the resealing process created a hazardous driving condition, appellee's failure to do so would constitute actionable negligence. However, with regard to the issue of issue of whether appellee breached its duty of reasonable care, a genuine issue of material fact remains.

We interpret appellee's motion for summary judgment as arguing that even if appellee breached a duty of reasonable care by failing to warn appellant of the hazard created by the loose stone, it is immune from liability because of its statutory sovereign immunity. Upon a review of R.C. 2744.02 (B) (3), we find that appellee is not protected by the general grant of sovereign immunity because this injury was allegedly due to the political subdivision's failure to keep the roads open, in repair, and free from nuisance. We then turn to R.C. 2744.03 (A)(3) to determine whether the decision not to warn traffic of the alleged hazard created by the loose stone was a discretionary decision related to policy-making powers delegated to that employee. Under certain conditions, the decision to post such a warning sign would involve the exercise of discretion of judgment. However, we disagree with the trial court that such a decision is a basic policy-making decision.

In determining whether that decision to post a "No Standing" sign was a policy-making decision, the Supreme Court of Ohio considered whether the decision involved the weighing of "'fiscal priorities, safety, and various engineering considerations.'" *Williamson* v. *Pavolovich* (1989), 45 Ohio St. 3d 179, 185. The court had considered similar factors in an earlier case regarding the decision to install traffic control devices. *Winwood* v. *Dayton* (1988), 37 Ohio St. 3d 282. While both of these cases were interpreting the scope of the second prong of the standard for the judicial doctrine of sovereign immunity, the phrase "basic policy-making decision" as used in the *Enghauser* standard and the phrase "policy-making" decisions as used in R.C. 2744.03 (A)(3) are equivalent terms. However, we find that these cases are factually distinguishable from the case before us. In the case at bar, the sign to be posted is temporary in nature and would not significantly affect traffic flow. Thus, we would find that the decision to post a sign in this case was not a decision that required a high degree of official discretion.

Therefore, we find that R.C. 2744.(A) (3) is not applicable to the township's omission to post a sign in this case, and the township is not entitled to assert a statutory sovereign immunity defense.

Wherefore, we find that the granting of summary judgment in this case in favor of appellee was in error. Accordingly, we find appellant's first assignment of error well-taken.

Having found that substantial justice was not done the party complaining, the judgment of the Wood Country Court of Common Pleas is reversed with regard to the granting of summary judgment in favor of appellee. This cause is remanded to the trial court for further proceedings not inconsistent with this opinion. Pursuant to App. R. 24, appellee is hereby ordered to pay the court costs incurred in connection with this appeal.

*Judgment reversed.*

PETER M. HANDWORK, P.J.
GEORGE M. GLASSER, J.
CHARLES D. ABOOD, J.
Concur.