DECISION AND JUDGMENT ENTRY
This is an appeal from a Washington County Common Pleas Court summary judgment in favor of the City of Marietta, defendant below and appellee herein.
Kay L. Engle, the administrator of the estate of Jeffrey N. Engle, plaintiff below and appellant herein, raises the following assignment of error for review:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT BY GRANTING DEFENDANT CITY OF MARIETTA'S MOTION FOR SUMMARY JUDGEMENT."
Our review of the record reveals the following facts pertinent to the instant appeal. On October 3, 1995, Jeffrey N. Engle had been traveling southbound on State Route 7, while David E. Ogburn was traveling northbound on State Route 7. As Ogburn approached a curve, the trailer his vehicle was pulling crossed over the center line, striking the front driver's side of Engle's vehicle and fatally injuring Engle.
At the point on the roadway where the accident occurred, the northbound and the southbound lanes are fourteen feet wide and have curbed shoulders. The speed limit is forty miles per hour, with an advisory speed limit of twenty miles per hour for northbound traffic.
Prior to approaching the northbound curve, the following signs are posted to advise a driver of the upcoming curve and other conditions: (1) two standard 36 x 36 inch curve warning signs, each with a twenty miles per hour advisory speed limit and a hazard identification beacon; (2) one 30 x 30 inch slippery when wet sign; (3) one 36 x 36 inch truck tip sign; (4) one 30 x 30 standard railroad advance warning sign; (5) two standard large arrow signs; and (6) four 18 x 24 standard chevron alignment signs.
At the time of the accident, the section of the road where the accident occurred was not under construction or any state of repair. Traffic patterns were operating under normal flow patterns. The Marietta City Engineer's Department had not received any reports of obstructions in the area. Moreover, immediately after the accident, the investigating officer did not observe any obstructions or defects in the roadway.
A subsequent investigation into the cause of the accident revealed that the trailer's brakes were out of adjustment and caused the brakes to lock up. When the brakes locked up, the trailer slid across the center line.
On January 24, 1997, appellant filed a complaint against Ogburn, Ogburn's employer and the owner of the trailer that struck appellant, and the City of Marietta.[1] In the complaint, appellant alleged, inter alia, that: "Fort Harmar Drive, at the site of the * * * motor vehicle accident, was designed, constructed, and maintained in a defective manner making travel thereon dangerous and Defendant City of Marietta had actual and constructive notice of its unsafe condition * * *." Appellant also alleged that appellee "willfully, wantonly, recklessly, and negligently failed in its duty to cause Fort Harmar Drive * * * to be kept open, in repair, free from nuisance, and safe to travel on * * *." Appellee filed an answer denying liability.
On May 4, 1998, appellee filed a motion for summary judgment. Appellee contended that pursuant to R.C. Chapter 2744, it was immune from liability for the decedent's injury. Appellee asserted that although R.C. Chapter 2744 contains exceptions to the general grant of non-liability, appellant had not demonstrated that any exception applied. Moreover, appellee argued that appellant's negligent construction and design claim must fail because appellee did not design the roadway. Rather, it is undisputed that the State of Ohio designed the roadway.
In response to appellee's motion, appellant asserted that genuine issues of material fact remained as to whether appellee was liable for the decedent's injury. Appellant alleged that the section of the road where the accident occurred was dangerous and constituted a nuisance. Appellant noted that an accident study conducted at appellee's request ranked the intersection as one of the most dangerous in the city.
On August 28, 1998, the trial court granted appellee's summary judgment motion. Appellant filed a timely notice of appeal.
In her sole assignment of error, appellant complains that the trial court improperly granted appellee's motion for summary judgment. Appellant asserts that genuine issues of material fact remain for resolution at trial regarding whether appellee is entitled to sovereign immunity. In particular, appellant contends that genuine issues remain as to whether appellee negligently maintained the roadway upon which the accident occurred and as to whether a nuisance existed upon the roadway of which appellee had knowledge. Additionally, appellant argues that appellee may be liable to the decedent even though appellee did not design the road. Appellant essentially asserts that appellee is liable for any design condition that results in a nuisance, regardless of which entity designed the roadway. Appellant further contends that appellee acted willfully, wantonly, and recklessly in failing to keep the road free from nuisance.
Appellee, on the other hand, contends that no genuine issues of material fact remain as to whether it is immune from liability. Appellee posits three different reasons why it is protected by the sovereign immunity statutes: (1) appellee did not design the road; (2) no evidence exists that a nuisance existed upon the roadway; (3) even if a nuisance existed, appellee possessed neither actual nor constructive knowledge of the nuisance; and (4) the discretionary defense set forth in R.C. 2744.03(A)(5) relieves appellee of any liability it may have under R.C.2744.02(B).
Appellee thus argues that appellant has failed to present any evidence that a nuisance existed upon the roadway. Appellee points out that appellant simply re-states the allegations contained in the complaint. Additionally, appellee asserts that when ruling upon appellee's motion for summary judgment, the trial court erroneously considered inadmissible hearsay evidence that appellant introduced.
When reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review. See, e.g., Village of Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105, 671 N.E.2d 241, 245. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157; Morehead v. Conley
(1991), 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786, 788. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
Civ.R. 56(C) provides, in relevant part, as follows:
 * * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421,429-30, 674 N.E.2d 1164, 1171.
In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings."Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66, 375 N.E.2d 46, 47. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:
 * * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. Dresher, supra; Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52,567 N.E.2d 1027, 1031.
Upon our review of the record in the case sub judice, we believe that the trial court appropriately granted summary judgment in appellee's favor. Our review of the record reveals that no genuine issues of material fact remain as to whether liability may attach to appellee. The evidence in the case at bar aptly demonstrates that the sovereign immunity provisions of the Revised Code protect appellee from liability for appellant's decedent's injury.
R.C. Chapter 2744, the Political Subdivision Tort Liability Act, absolves political subdivisions of tort liability, subject to certain exceptions. See Franks v. Lopez (1994), 69 Ohio St.3d 345,347, 632 N.E.2d 502, 504; see, also, Helton v. Scioto Bd.Cty. Commrs. (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841,843. Whether a political subdivision is entitled to statutory immunity under Chapter 2744 presents a question of law for the court's determination. Conley v. Shearer (1992), 64 Ohio St.3d 284,292, 595 N.E.2d 862, 869; see, also, Feitshans v. Darke Cty.
(1996), 116 Ohio App.3d 14, 19, 686 N.E.2d 536, 539.
R.C. 2744.02(A)(1)[2] sets forth the general rule that "a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."
R.C. 2744.02(B) contains certain exceptions to the general rule of non-liability. Relevant to the case at bar, R.C. 2744.02(B)(3) provides that a political subdivision is liable "for injury, death, or loss to persons or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance."[3] If an exception applies, the political subdivision will be liable, unless one of the defenses contained in R.C. 2744.03 "re-absolves" the political subdivision of immunity. See, generally, Hallett v. Stow Bd. of Edn. (1993),89 Ohio App.3d 309, 313, 624 N.E.2d 272, 274; Howell v. The UnionTownship Trustees (Mar. 18, 1999), Scioto App. No. 96 CA 2430, unreported.
R.C. 2744.03 specifies certain defenses a political subdivision may assert to defeat a claim that it is liable under one of the R.C. 2744.02(B) exceptions. Relevant to the case at bar, R.C.2744.03(A)(5) provides:
 In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 (5) The political subdivision is immune from liability if the injury, death or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.
The R.C. 2744.03(A) defenses become an issue only after the court has determined that one of the R.C. 2744.02(B) exceptions to the general rule of non-liability applies. See Feitshans,116 Ohio App.3d at 22, 686 N.E.2d at 541 (stating that "the defenses set forth in R.C. 2744.03 are only relevant where the plaintiff demonstrates that the governmental function at issue comes under a specific exception to general immunity") (citing Miller v.Wadsworth (1994), 93 Ohio App.3d 278, 638 N.E.2d 166; Howe v.Jackson Twp. Bd. of Trustees (1990), 67 Ohio App.3d 159, 163,586 N.E.2d 217, 220, jurisdictional motion overruled (1990),53 Ohio St.3d 717, 560 N.E.2d 779; Shank v.Springfield (May 3, 1995), Clark Co. App. No. 94-CA-71, unreported)).
In the case at bar, the parties do not dispute that appellee is a political subdivision entitled to the general grant of immunity. The parties dispute, however, whether a genuine issue of material fact remains as to whether appellee's immunity is excepted under R.C. 2744.02(B)(3). specifically, the parties differ as to whether a genuine issue of material fact remains as to whether appellee failed to keep the road "open, in repair, and free from nuisance." Furthermore, the parties contest whether, assuming one of the exceptions to non-liability applies, appellee may defeat appellant's claim by asserting the R.C. 2744.03(A)(5) defense — that appellant's decedent's injury resulted from the exercise of discretion.
In determining whether a nuisance, for purposes of R.C.2744.02(B)(3), exists, "the proper focus should be on whether a condition exists within the township's control that creates a danger for ordinary traffic on the regularly traveled portion of the road." Franks, 69 Ohio St.3d at 348, 632 N.E.2d at 505; see, also, Manufacturer's Natl. Bank of Detroit v. Erie Cty. RoadCommn. (1992), 63 Ohio St.3d 318, 322, 587 N.E.2d 819, 823
(stating that a municipality possesses "a duty to keep the areas within its control free from nuisance, i.e., conditions that directly jeopardize the safety of traffic on the highway").
 "The phrase `free from nuisance' in former R.C. 2744.02(B)(3) has been interpreted most often by this court in the context of an alleged failure by a political subdivision to keep its roads and highways free from physical obstructions that interfere with visibility and create an unsafe condition."
Cater v. Cleveland (1998), 83 Ohio St.3d 24, 30, 697 N.E.2d 610,616. A nuisance exists, for example, when there is "a permanent obstruction to visibility in the right-of-way which renders the regularly traveled portions of the highway unsafe for the usual and ordinary course of travel." Franks, 69 Ohio St.3d at 348,632 N.E.2d at 505; see, also, Natl. Bank of Detroit, supra, at paragraph one of the syllabus (finding that corn growing in the right-of-way that obstructs a driver's view may constitute a nuisance); White v. Ohio Dept. of Transp. (1990), 56 Ohio St.3d 39,564 N.E.2d 162 (stating that foliage blocking driver visibility may constitute a nuisance); Fankhauser v. Mansfield
(1969), 19 Ohio St.2d 102, 249 N.E.2d 789 (finding that a nuisance may arise from a malfunctioning traffic light); Richardsv. Rubicon Mill Condominium Assn. (1995), 100 Ohio App.3d 264,653 N.E.2d 751 (holding that overhanging tree limbs may constitute a nuisance), discretionary appeal denied (1995),72 Ohio St.3d 1530, 649 N.E.2d 839; Jones v. Shelly Co. (1995),106 Ohio App.3d 440, 447, 666 N.E.2d 316, 320 (finding that "the negligent placement of an advance warning construction sign may constitute a nuisance"); Howell v. Union Township Trustees (Mar. 18, 1997), Scioto App. No. 96 CA 2430, unreported (finding that a nuisance may exist when a township negligently applies oil to a paved portion of the road).
Alleging that a roadway is defectively designed or constructed, or that the roadway lacks traffic or warning signs does not, however, sufficiently demonstrate that a nuisance exists upon the roadway. Franks, 69 Ohio St.3d at 348, 632 N.E.2d at 505;Feitshans, 116 Ohio App.3d at 23, 686 N.E.2d at 542 (stating that failure to erect a sign is not a nuisance); Jones v. Franklin
(1995), 102 Ohio App.3d 114, 118, 656 N.E.2d 1025, 1027 (stating that "the unequivocal language of Franks * * * expressly excludes the failure to install a sign from the definition of a nuisance"); Valescu v. Cleveland Metroparks System (1993),90 Ohio App.3d 516, 521, 630 N.E.2d 1, 3 (stating that "[t]he wearing of the chip and seal berm and the lower level of the sloping gravel embankment beyond the berm" does not demonstrate that a nuisance exists); Scanlon v. Consolidated Railroad Corp.
(Apr. 13, 1990), Fulton App. No. 89-FU-8, unreported (holding that failure to place signs at a railroad crossing is not a nuisance); see, also, Covent Ins. Co., Ltd. v. Carroll Cty.Commrs. (1981), 2 Ohio App.3d 410, 442 N.E.2d 486 (stating that placement of sign giving incorrect bridge clearance was not a nuisance); Saulsbury v. Columbus (Mar. 9, 1999), Franklin App. No. 98AP-559, unreported (stating that characterizing a roadway's design over a culvert "as a dangerous physical obstruction does not alter the fact that it is the road and culverts' design, not maintenance, that created the dangerous condition")
Once it is demonstrated that a nuisance exists, liability will not attach unless the plaintiff also establishes that the political subdivision possessed "actual or constructive notice of the nuisance." Vogel v. Wells (1991), 57 Ohio St.3d 91, 97,566 N.E.2d 154, 160; see, also, Franks, 69 Ohio St.3d at 349,632 N.E.2d at 505. The political subdivision possesses constructive knowledge of the nuisance "if `such nuisance existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger * * *.' Beebe v.Toledo (1958), 168 Ohio St. 203, 207, 151 N.E.2d 738, 741."Franks, 69 Ohio St.3d at 349, 632 N.E.2d at 505.
In Franks v. Lopez (1994), 69 Ohio St.3d 345, 632 N.E.2d 502, the court discussed when a political subdivision may be liable for failing to keep a roadway free from nuisance. In Franks, the plaintiffs alleged that the defendants, a county and a township, failed to keep the road upon which the accident occurred free from a nuisance. The plaintiffs alleged that a nuisance resulted from the defective design, construction, and maintenance of the intersection. The plaintiffs asserted that the following factors combined to render the curve a deadly nuisance: (1) the lack of a posted speed limit; (2) the lack of lighting at night; (3) the lack of an adequate warning sign visible at night; (4) a sharp and sudden curve; (5) the uneven pavement; (6) a deficient cross slope; (7) proximity to the river; and (8) the absence of a guardrail. Franks, 69 Ohio St.3d at 347, 632 N.E.2d at 504.
The Ohio Supreme Court found that a question of fact remained as to whether the township had actual or constructive knowledge of the nuisance created by an improperly reflectorized and improperly placed sign. The court noted that the plaintiffs presented an affidavit from an engineering expert describing the hazard, along with photographs showing the obviousness of the danger posed by the failure to maintain the reflective sign. Moreover, the plaintiffs introduced the deposition testimony of a nearby resident who stated that there had been at least three previous accidents at the intersection.
The Franks court further rejected the defendants' assertion that R.C. 2744.03(A)(5) relieved it of liability. The court stated:
 "Overhanging branches and foliage which obscure traffic signs, malfunctioning traffic signals, signs which have lost their capacity to reflect, or even physical impediments such as potholes, are easily discoverable, and the elimination of such hazards involves no discretion, policy-making or engineering judgment. The political subdivision has the responsibility to abate them and it will not be immune from liability for its failure to do so."
 Franks, 69 Ohio St.3d at 349, 632 N.E.2d at 505 (citingFankhauser v. Mansfield (1969), 19 Ohio St.2d 102,249 N.E.2d 789; Robert Neff Sons v. Lancaster (1970), 21 Ohio St.2d 31,254 N.E.2d 693). The court stated: "[O]nce the decision to install has been made, the implementation of that decision is not immune from liability." Franks, 69 Ohio St.3d at 348,632 N.E.2d at 505-06 (citing Winwood v. Dayton (1988), 37 Ohio St.3d 282,525 N.E.2d 808)
In Helton v. Scioto Bd. of County Commrs. (1997), 123 Ohio App.3d 158,703 N.E.2d 841, this court concluded that water flowing across a roadway due to a negligently maintained drainage ditch constituted a nuisance. In Helton, the driver of a vehicle was traveling on a section of the road that had water flowing over it, when the driver lost control and struck the plaintiffs' oncoming vehicle. The plaintiffs filed a complaint against the county commissioners, asserting that the county negligently maintained the ditch into which the water should have drained and thereby created a nuisance. The trial court entered summary judgment in the county's favor.
On appeal, we reversed the trial court's decision. The Helton
court noted that the plaintiffs presented affidavits from others who frequented the road where the accident occurred and who stated that the roadway had water running over it whenever it rained or whenever snow melted. Moreover, the plaintiffs presented evidence that debris had clogged the ditch. The Helton
court found that "reasonable minds could conclude that water flowing over the road whenever it rains or snows as a result of an improperly designed or maintained drainage system, over which the county has control, is as much an impediment to the safe flow of traffic as a malfunctioning traffic light * * *." Helton,123 Ohio App.3d at 164, 703 N.E.2d at 845.
In Israel v. Jefferson Twp. Bd. of Trustees (Dec. 10, 1990), Montgomery App. No. 12071, unreported, the court concluded, in accord with Franks, that a defectively designed roadway is not a nuisance. In Israel, the plaintiff, while driving down a roadway, failed to negotiate a curve and went left of center. The plaintiff then crashed into a utility pole. The trial court granted summary judgment in the township's favor.
On appeal, the plaintiff asserted that the accident reconstructionist's report precluded summary judgment. The report stated that the road "had `numerous design defects which were a major contributor to the cause of [plaintiff's] accident' [The report] further concluded that `these defects were open and blatant and easily discoverable by those in charge of providing a safe thoroughfare for the traveling public.'" Thus, the plaintiff argued that the township "clearly had notice of the `design defect.'" The court of appeals, however, concluded that a design defect does not constitute a nuisance.
In the case at bar, we have reviewed the pertinent Civ.R. 56 evidence and conclude that appellant has presented no evidence that a nuisance existed upon the roadway. Appellant has not argued that any signs along the roadway were improperly placed or improperly reflectorized, as was the case in Franks. Rather, appellant's argument appears to rest more upon the theory that the roadway was somehow defectively designed or constructed. SeeSaulsbury, supra. Franks and other cases clearly state that a political subdivision may not be liable for a defectively designed roadway.
Moreover, appellant has presented no evidence that the city failed to maintain or otherwise repair the roadway. Instead, appellant essentially re-states the allegations contained in the complaint. We again note that in order to survive a properly supported summary judgment motion, the non-moving party must produce some evidence that the political subdivision failed to maintain the road, failed to repair the road, or permitted a nuisance to exist on the road. The non-moving party may not defeat a properly supported summary judgment motion simply by alleging that a nuisance exists. Rather, the non-moving party must specify the conditions existing upon the roadway that constitute a nuisance. Thus, we agree with appellee that appellant, in an attempt to defeat appellee's summary judgment motion, simply re-alleges the material contained in the complaint.
In sum, appellant has produced no evidence from which reasonable minds could conclude that the city failed in its R.C.2744.02(B)(3) duty. Consequently, the trial court properly concluded that no genuine issues of material fact remained for trial as to whether a nuisance existed upon the roadway.
Thus, because appellant failed to establish that a R.C.2744.02(B) exception applied, we need not decide whether the R.C.2744.03(A)(5) discretionary defense would apply to re-absolve appellee of liability. See Feitshans, supra. Assuming, arguendo, that an R.C. 2744.02(B) exception applied in the case at bar, we nevertheless conclude that the trial court properly entered summary judgment in favor of appellee.
To overcome a properly raised discretionary defense, the plaintiff must establish that the political subdivision's exercise of discretion "was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C.2744.03(A)(5). In the case at bar, we find absolutely no evidence that appellee acted wantonly, reckless, maliciously, or with bad faith.
We further note that appellee has presented a cross-assignment of error. Appellee contends that the trial court erred in considering inadmissible hearsay evidence when ruling upon its motion for summary judgment. We believe, however, that our decision regarding appellant's assignment of error renders appellee's cross-assignment of error moot. We therefore decline to address the cross-assignment of error. See App.R. 12(A)(1)(c).
Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
[1] Neither Ogburn nor Ogburn's employer are party to the instant appeal.
[2] We note that the General Assembly has twice amended the Political Subdivision Tort Liability Act subsequent to the time appellant filed the complaint. See H.B. No. 350 (Jan. 1, 1997); H.B. No. 215 (June 30, 1997). The statutes cited and quoted in this opinion contain the language in existence at the time appellant filed the complaint, January 24, 1997. Additionally, we note that subsequent amendments to the Revised Code were struck down in a recent Ohio Supreme Court decision. In State ex rel.Ohio Academy of Trial Lawyers v. Sheward (1996), Ohio St.3d, N.E.2d, 1999 LEXIS 2580, the Ohio Supreme Court held that Am.Sub.H.B. 350, which "amends, enacts, or repeals over one hundred sections of the Ohio Revised Code `relative to changes in the laws pertaining to tort and other civil actions,'" including "immunity and liability of political subdivisions (R.C. 723.01, 2744.01 through 2744.06)" is "unconstitutional in toto."
[3] Am.Sub.H.B. No. 350 amended R.C. 2744.02(B)(3) to provide as follows:
 * * * [P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *.
Thus, the amendment, among other things, eliminated the phrase "free from nuisance" and inserted the phrase "negligent failure to remove obstructions." As we point out supra, however, the Ohio Supreme Court found Am.Sub.H.B. 350 unconstitutional intoto.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
KLINE, P.J. EVANS, J.: Concur in Judgment Opinion.
For the Court
 By: __________________ PETER B. ABELE Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.