**WEBB et al.,**

**v.**

**EDWARDS, Appellant; Lawrence County, Appellee.**

[Cite as *Webb v. Edwards,* 165 Ohio App.3d 158, 2005-Ohio-6379.]

Court of Appeals of Ohio,
Fourth District, Lawrence County.

No. 04CA35.

Decided Nov. 8, 2005.

John R. Haas, for appellant.

Randall L. Lambert, for appellee.

McFARLAND, Judge.

{¶ 1} Defendant/third-party plaintiff/appellant, Sheila G. Edwards, appeals the Lawrence County Common Pleas Court's grant of summary judgment in favor of third-party defendant/appellee, Lawrence County. Appellant contends that the trial court erred by granting appellee's motion for summary judgment, asserting that (1) Lawrence County created a nuisance and (2) Lawrence County employees' conduct was reckless. We agree with appellant's assignment of error and accordingly reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

{¶ 2} Appellant and appellee agree on the facts currently before this court. On July 13, 2001, plaintiff Christina Webb stopped in traffic behind another vehicle and a slow-moving mower, owned and operated by appellee, on County Road 31 in Chesapeake, Ohio. The parties agree that County Road 31 is one of the fastest traveled roads in Lawrence County. The mower was being operated by Jeff Lawless and was being followed by a shadow vehicle operated by Charles Scherer, both Lawrence County employees. The parties also agree that one of the purposes of utilizing a shadow vehicle is to warn people that the mower is ahead.

{¶ 3} On July 13, 2001, Charles Scherer permitted several vehicles to get between him and the mower operated by Jeff Lawless when he pulled into a driveway to turn around to follow the mower down the other side of County Road 31. The mower operator failed to wait for the driver of the shadow vehicle to turn around and also failed to pull over to allow the vehicles to pass. At least three vehicles passed the shadow vehicle while it was parked in the driveway attempting to turn around. Plaintiff, Christina Webb, testified that as she rounded a blind curve, she brought her car to a stop due to traffic stopped in front of her. While she remained stopped in the roadway, she was struck from behind by a vehicle operated by appellant. Appellant testified that she was unable to stop her vehicle or avoid the collision under the circumstances. The posted speed limit on County Road 31 is 55 mph.

{¶ 4} On February 10, 2003, plaintiffs filed a complaint alleging that Christina suffered injuries as a result of the negligent operation of a motor vehicle by appellant. Richard Webb claimed loss of consortium. State Farm Mutual Automobile Insurance Company was named as a defendant for claims under the policy issued by State Farm to the plaintiffs. On May 1, 2003, appellant filed a third-party complaint against appellee, asserting that appellee was legally responsible for some or all of plaintiffs' damages. The trial court granted summary judgment in favor of appellee, finding that (1) no genuine issue of material fact existed, (2) appellant alone was negligent and appellee, therefore, was entitled to dismissal as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion was that appellee was entitled to dismissal. Although the trial court referred to sovereign immunity in its judgment entry, it is not clear to this court whether the trial court relied on that doctrine in issuing its decision. It is from this judgment that appellant now brings her appeal, assigning the following error:

{¶ 5} "The trial court erred by granting the motion for summary judgment of third-party defendant Lawrence County thereby dismissing Sheila Edwards's third-party complaint."

{¶ 6} In support of this assignment of error, appellant offers two arguments: (1) Lawrence County created a nuisance and (2) Lawrence County employees' conduct was reckless. Appellant more specifically argues that the trial court erred in determining that the county was entitled to statutory immunity, arguing that the actions or inactions of county employees created a nuisance by failing to maintain its warnings to the public of the hazard ahead. Appellant also argues that questions of fact exist as to whether the employees' conduct was wanton or reckless in failing to maintain warnings, given the nature of the roadway at issue and the propensity of the public to travel at high speeds.

{¶ 7} Summary judgment is appropriate only when it has been established (1) that there is no genuine issue as to any material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(A). See *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411, 599 N.E.2d 786. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 535, 629 N.E.2d 402.

{¶ 8} In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences that can be drawn from it to determine if the opposing party can possibly prevail. *Morehead*, 75 Ohio App.3d at 411–412, 599 N.E.2d 786. "Accordingly, we afford

no deference to the trial court's decision in answering that legal question." Id. See, also, *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10.

{¶ 9} A party raising an immunity defense to support a motion for summary judgment "must present evidence tending to prove the underlying facts upon which the defense is based. *Evans v. S. Ohio Med. Ctr.* (1995), 103 Ohio App.3d 250, 255, 659 N.E.2d 326. See, also, *Vance v. Jefferson Area Local School Dist. Bd. of Edn.* (Nov. 9, 1995), Ashtabula App. No. 94–A–0041, 1995 WL 804523. The plaintiff, as the nonmoving party, must then present evidence showing the existence of a genuine issue as to these material facts. Id." *Hall v. Ft. Frye Local School Dist. Bd. of Edn.* (1996), 111 Ohio App.3d 690, 694–695, 676 N.E.2d 1241.

{¶ 10} In her sole assignment of error, appellant asserts that appellee and its employee are not entitled to sovereign immunity because the county created a nuisance and because the county employee's conduct was reckless. This case involves R.C. 2744.02 and 2744.03, code sections which fall under the Political Subdivision Tort Liability Act. R.C. 2744.02 provides:

{¶ 11} "(A)(1)* * * Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function. * * *

{¶ 12} "(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:* * *

{¶ 13} "(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivision open, in repair and free from nuisance." [1]

{¶ 14} Additionally, R.C. 2744.03, Defenses and Immunities, provides:

---

1. The current version of R.C. 2744.02(B)(3) provides that "political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads * * *." However, the current version did not take effect until April 2003. Because the events sub judice occurred on July 13, 2001, we use the version of R.C. 2744.02(B)(3) in effect at that time.

{¶ 15} "(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability: * * *

{¶ 16} "(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 17} "(6) * * * the employee is immune from liability unless one of the following applies:

"(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

"(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

"(c) Liability is expressly imposed upon the employee by a section of the Revised Code."

{¶ 18} Thus, and as we summarized in *Engle v. Salisbury Twp.*, Meigs App. No. 03CA11, 2004-Ohio-2029, 2004 WL 869362, *political subdivisions* are generally "immune from liability for acts or omissions connected with governmental or proprietary functions. R.C. 2744.02(A)(1). However, R.C. 2744.02(B) provides several exceptions to this general grant of immunity. Under R.C. 2744.02(B)(3), political subdivisions are liable for injury or death 'caused by their failure to keep roads, highways, [and] streets * * * within the political subdivision open, in repair, and free from nuisance * * *.'" We further reasoned that R.C. 2744.02(B)(3) "imposes a duty on political subdivisions to keep the roads in their control free from conditions that create a danger for ordinary traffic on the regularly traveled portion of the road." Id., citing *Manufacturer's Natl. Bank of Detroit v. Erie Cty. Road Comm.* (1992), 63 Ohio St.3d 318, 321, 587 N.E.2d 819; *Haynes v. Franklin*, 95 Ohio St.3d 344, 2002-Ohio-2334, 767 N.E.2d 1146, at ¶ 13. "Failure to do so results in liability unless one of the defenses in R.C. 2744.03(A) applies. See R.C. 2744.02(B); 2744.03(A); *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610."

{¶ 19} Further, *employees of political subdivisions* are immune from liability for acts or omissions connected with governmental or proprietary functions unless (1) the employee's acts or omissions were manifestly outside the scope of the employee's employment, (2) the employee's acts or omissions were

with malicious purpose, in bad faith, or in a wanton or reckless manner, or (3) civil liability is expressly imposed upon the employee by a section of the Revised Code. *Engle* at ¶ 19, citing R.C. 2744.03(A)(6).

{¶ 20} Whether a state or other political subdivision, or, in this case, the county, is liable in tort depends on whether the acts or omissions complained of constitute a policy decision, in which case immunity applies, or implementation of a policy, in which case immunity does not apply. In the case sub judice, the issue we must decide is whether, as a matter of law, the manner in which the county and its employee warned or failed to warn motorists of a slow-moving vehicle ahead of a sharp curve on a county roadway constitutes an "exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources" under R.C. 2744.03(A)(5).

{¶ 21} This case involves the placement of temporary warning signs; however, the "warning sign" was not in the traditional method but, rather, by means of a shadow vehicle. In this case, a slow-moving mower was being followed by a shadow vehicle, which was a pickup truck, equipped with warning lights and a sign on the back. The use of a shadow vehicle in connection with mobile operations such as mowing, paving, or striping is permissible but not mandatory under the Ohio Manual of Uniform Traffic Control Devices ("OMUTCD").[2]

{¶ 22} As we discussed in *Marcum v. Adkins* (Mar. 28, 1994), Gallia App. No. 93CA17, 1994 WL 116233, other courts in cases involving the placement of temporary warning signs have refused to allow sovereign immunity to shield political subdivisions. See *Howe v. Jackson Twp. Bd. of Trustees* (1990), 67 Ohio App.3d 159, 586 N.E.2d 217 (dealing with placement of warning signs for loose stones on a roadway), and *Davis v. McClain* (Nov. 27, 1992), Carroll App. No. 614, 1992 WL 356163 (involving the placement of warning signs where a county crew had spread loose sand). The reasoning in both of these cases relied on the fact that the decision how and where to utilize such signs does not involve a high degree of official discretion and therefore is not afforded immunity protection.

{¶ 23} The courts in *Howe* and *Davis*, supra, also considered the OMUTCD. In those cases, the courts held that the failure to place warning signs did not violate mandatory provisions of the OMUTCD. The OMUTCD contains manda-

---

2. R.C. 4511.09, uniform system of traffic control devices, provides that "[t]he department of transportation shall adopt a manual and specifications for a uniform system of traffic control devices, including signs denoting names of streets and highways, for use upon highways within this state. Such uniform system shall correlate with, and so far as possible conform to, the system approved by the American Association of State Highway Officials." The Ohio Manual of Uniform Traffic Control Devices ("OMUTCD") is a product of the mandate contained in R.C. 4511.09.

tory, advisory, and permissive conditions, differentiated by the use of the terms "shall," "should," and "may." Standards using the word "shall" are considered mandatory. Standards using the word "should" are considered to be advising, but not mandating, the particular signage or other device. Standards using the word "may" carry no requirement or recommendation.

{¶ 24} The 1972 version of the OMUTCD, the version applicable to the facts sub judice, provides little guidance regarding the use of shadow vehicles. The OMUTCD provides in Section 7B–6, Erection of Signs, that "[f]or maximum mobility on certain types of maintenance operations, a large sign *may* sometimes be effectively mounted on a vehicle stationed in advance of the work or moving along with it. This may be the working vehicle itself, as in the case of shoulder-mowing or paint-striping equipment." (Emphasis added.) Note that the use of the word "may" indicates that there is no requirement that the signage be mounted on a vehicle other than the working vehicle itself.

{¶ 25} The OMUTCD also mentions the use of shadow vehicles in Section 7G–8, Flashing Arrow Panels, providing that "[f]or a moving operation on a multilane directional highway where a lane is closed, the arrow panel *should* be placed at the rear of the operation in the closed lane, preferably on a vehicle separate from the maintenance vehicle itself (See figure C–31). The arrow panel *should* always remain *upstream of the maintenance vehicle where adequate recognition distance is available.*" (Emphasis added.) However, this section further provides that "[t]he flashing arrow panel *shall* NOT be used on two lane, two way roadways." (Emphasis added.) Therefore, it appears that while the OMUTCD recommends the practice of mounting signage on a shadow vehicle during moving operations that will "always remain upstream of the maintenance vehicle where adequate recognition distance is available," this is not a requirement, and in fact it is completely inapplicable to the case at hand, which involves a two-lane, two-way roadway.

{¶ 26} Further, the OMUTCD contains a diagram entitled C–13 which illustrates the use of a shadow vehicle for "Moving Operations on the Shoulder." The diagram provides for a minimum distance between the shadow vehicle and the work vehicle of 500 feet; however, it does not specify a maximum distance. Additionally, this diagram indicates that the use of a stationary warning sign is optional in this type of situation. Based upon the foregoing, the county did not violate any mandatory standards regarding the use of shadow vehicle.

{¶ 27} Therefore, the issue before this court involves whether the decision to use a shadow vehicle and the manner in which it was used constitutes the type of judgment or discretion contemplated by R.C. 2744.03(A)(5). Based on the foregoing, we hold that the decisions by the county regarding how and where to utilize a shadow vehicle do not constitute an exercise of judgment or discretion

that renders the county immune from liability under R.C. 2744.03(A)(5). Such a decision does not involve a high level of official discretion, and, therefore, the county may not claim immunity. Since the record includes evidence that, construed most strongly in favor of appellant, raises a genuine issue of fact as to whether the county negligently implemented a shadow vehicle in light of the recommendations contained in the OMUTCD, thereby failing to keep the roadway free from nuisance as required by R.C. 2744.02(B)(3), the trial court erred in granting summary judgment. It is a question for the jury as to whether the county was negligent and if so, how to apportion liability between the county and appellant.

{¶ 28} However, our inquiry does not end here. We must also decide whether the county employee may be held liable under R.C. 2744.03(a)(6)(b). 'Wanton and reckless conduct' is defined as perversely disregarding a known risk, or acting or intentionally failing to act in contravention of a duty, knowing or having reason to know of facts which would lead a reasonable person to realize such conduct creates an unreasonable risk of harm substantially greater than the risk necessary to make the conduct negligent." *Fowler v. Williams Cty. Commrs.* (1996), 113 Ohio App.3d 760, 775, 682 N.E.2d 20, citing *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 104–105, 559 N.E.2d 705.

{¶ 29} In their depositions, Jeffrey Lawless, Charles Scherer, and Donald Lambert provided testimony related to the conditions of the road at issue and the reasons for utilizing a shadow vehicle. Jeffrey Lawless testified that "Big Branch is a busy road," and that his understanding of the use of a shadow vehicle was "for traffic, and to pick things up, or if it [the mower] throws things out in the road, you've got to clean it and to let people aware that we're mowing." When asked if he knew what the speed limit was on Big Branch Road, Charles Scherer testified, "No, but they sure need one there. I can tell you that." He also testified, in response to a question as to whether the crew placed stationary signs, "No, haven't got time to do it. By the time you put the signs out and get back to the tractor, he's done gone, so that's all you get done is picking signs up, but we got the one on the truck."

{¶ 30} Additionally, Donald Lambert, the County Road Superintendent, provided deposition testimony. In reference to Big Branch Road, Lambert testified that "[p]eople are crazy up there. They run over top of you," "[t]hey travel so fast and they go up over the banks," and "I'm telling you, it's one of the worst roads we have in our county." He also testified as to his understanding of the proper use of a shadow vehicle, stating that "[h]e's out there to warn people there's a mower ahead of them * * *."

{¶ 31} In light of this testimony by several county employees as to the dangerousness of Big Branch Road and the fact that the traffic travels at high

rates of speed, coupled with their knowledge of the reasons for utilizing a shadow vehicle (to warn drivers), the record contains evidence that, construed most strongly in favor of appellant, raises a genuine issue of fact as to whether county employee Jeff Lawless acted in a reckless and wanton manner in failing to ensure that the shadow vehicle was in fact following him before proceeding around a sharp curve on Big Branch Road. Therefore, the trial court erred in granting summary judgment on this issue as well. As a result, we reverse and remand for proceedings consistent with this determination.

Judgment reversed
and cause remanded.

KLINE, J., concurs.

HARSHA, J., dissents.

HARSHA, Judge, dissenting.

{¶ 32} I conclude as a matter of law that the facts established by the summary judgment evidence cannot support a finding that the county's mowing operation created a nuisance. In short, the county's conduct did not create an unreasonable risk of danger to ordinary traffic. Likewise, I conclude as a matter of law that the evidence falls far short of establishing reckless or wanton conduct on the part of the tractor driver. Since the question of whether immunity applies presents a question of law properly determined by the court prior to trial, I would affirm the judgment. See *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862.